**Joycelyn M. JONES, Hurie Jones, Plaintiffs,**

v.

**JEFFERSON PARISH SCHOOL BOARD, Defendant.**

**Civ. A. No. 81–3563.**

United States District Court, E. D. Louisiana, Section "E" (2).

Jan. 12, 1982.

Joycelyn M. Jones, in pro. per.

Hurie Jones, in pro. per.

Jack A. Grant, Ernest Barrow, Gretna, La., for defendant.

CASSIBRY, District Judge:

This matter was tried before the court without a jury on September 17, 1981. The court having considered the pleadings, the testimony of the witnesses, and the documents in evidence, hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1.

Joycelyn M. Jones is a duly certified tenured teacher with the Jefferson Parish School Board.

2.

In the beginning of the 1979–80 school year, Mrs. Jones and all other English teachers were evaluated pursuant to the provisions of La.Rev.Stat. 17:391.5 and the

provisions of the Jefferson Parish School Board Tenured Teacher Evaluation Program.

### 3.

An initial conference for tenured teachers was called by the principal of Livaudais Middle School, William Sumrall, on August 22, 1979. At this meeting, the teachers were told to draft their "personal goals and objectives" for the year, and to submit them to Mr. Sumrall.

### 4.

A teacher's strike began the day after the initial conference and lasted until the beginning of October, 1979.

### 5.

Mrs. Jones' personal goals for the 1979–80 school year were not established timely.

### 6.

During the 1979–80 school year, Mrs. Jones was assigned to teach more level III [1] classes (four) than any other English teacher at Livaudais Middle School. Mrs. Cheryl Ciolino, assistant principal, assigned Mrs. Jones these level III classes because one of the other English teachers, Mrs. Lane, was on sabbatical leave during the 1979–80 school year and her classes had to be divided among the other English teachers. Mrs. Jones received the level III classes because such classes deal with grammar, and if Mrs. Jones had received Mrs. Lane's other classes, she would have been required to teach literature, which Mrs. Jones had not taught in recent years.

### 7.

During the 1980–81 school year, while Mrs. Jones was being evaluated under the Remediation Program [2] of the Jefferson Parish School Board, she taught only two level III classes. Other English teachers had more than two level III classes that year.

### 8.

Black teachers are not more frequently assigned to teach level III classes than are white teachers at Livaudais Middle School.

### 9.

On November 26, 1979, Ms. Ciolino conducted a classroom observation of Mrs. Jones in which the students were not all actively participating in the lesson. Ms. Ciolino recommended a change in the format of Mrs. Jones' lesson plans and also recommended a certain seating arrangement to help control classroom behavior. She also suggested that Mrs. Jones better utilize classroom time and increase the pace with which she was covering the subject matter. A post-classroom observation meeting was held between Mrs. Jones and Ms. Ciolino at which time the above points were discussed and Mrs. Jones was given an opportunity to respond to Ms. Ciolino's observations.

### 10.

On January 3, 1980, Ms. Ciolino conducted a second classroom observation of Mrs. Jones in which she found that Mrs. Jones was not prepared for the subject matter she was teaching and that she had trouble managing the students in the classroom. A post-observation conference was held between Ms. Ciolino and Mrs. Jones at which time the above points were discussed, and Mrs. Jones was given an opportunity to respond. Ms. Ciolino also requested help for Mrs. Jones from the English Consultant.

### 11.

On January 28, 1980, Margaret S. Goodman, English Consultant, observed Mrs.

---

1. Jefferson Parish School Board guidelines call for various levels in each class or grade (e.g., level I, II, III). For example, a level III eighth grade class might use sixth grade level educational materials, while a level I eighth grade class would use eighth grade level educational materials. Placement in the various levels is based on teacher recommendations, the student's performance records, and test scores. A student's race is not a relevant consideration, and, in fact, the racial background of a student is generally unknown at the time that students are assigned to the various levels.

2. During the course of regular teacher evaluations, if a teacher's performance is reported as deficient in one or more areas, the teacher is placed "on remediation." Under the Jefferson Parish School Board Remediation programs, a teacher is given an opportunity to take part in various activities designed to correct the deficiencies.

Jones' English class in which she found Mrs. Jones was not being specific enough with her directions to the students, nor was she maintaining order in the classroom during roll call. She suggested different classroom procedures for Mrs. Jones and suggested that she could improve classroom activities by being better prepared for class.

12.

On January 22, 1980, Mr. Milton Skorlich, Personnel Evaluator, observed Mrs. Jones' classes and suggested to her that she give better instructions to the students, increase her monitoring techniques by circulating through the classroom, and prepare more examples to give to the students during class.

13.

On February 21, 1980, Ms. Goodman again observed Mrs. Jones' English class in which she found that Mrs. Jones was not maintaining order among the students, and that the noise level was too high for effective teaching. She also found that Mrs. Jones was not giving specific directions and assignments to the students.

14.

On February 27, 1980, Mr. Sumrall observed Mrs. Jones' English class and noted that Mrs. Jones was having trouble maintaining classroom discipline and was also having trouble with her lesson plans. A post-observation conference was held to discuss these points on March 11, 1980 at which time Mrs. Jones had an opportunity to respond.

15.

On February 26, 1980, during his classroom observation of Mrs. Jones, Mr. Skorlich found that students were not paying attention, were leaving their seats and walking around the classroom, and were also refusing to follow Mrs. Jones' directives. He also noted that there was an unsatisfactory noise level throughout the class period. Mr. Skorlich recommended to Mrs. Jones that she maintain a fixed seating arrangement and require the students always to sit in the same seats. He also suggested that she establish rules and procedures governing the behavior of students. Overall, he made approximately twelve suggestions to her to assist in improving her performance in the area of classroom management.

16.

On May 14, 1980, a conference was held between Mr. Sumrall and Mrs. Jones at which time Mrs. Jones' professional competency was discussed, and the particular areas in which she needed to improve were clarified. At this meeting, Mrs. Jones was placed on a Remediation Program for the 1980–81 school year pursuant to the Jefferson Parish School Board Teacher Tenure Evaluation Program.

17.

On June 3, 1980, the final conference pursuant to the Tenure Teacher Evaluation Program was held between Mr. Sumrall and Mrs. Jones.

18.

On September 18, 1980, a conference was held between Ms. Ciolino and Mrs. Jones concerning the excessive amount of noise emanating from her classroom. Ms. Ciolino suggested that Mrs. Jones seat these students in alphabetical order, require them to sit in the assigned seats each day, and to establish rules and regulations for these students to write in their notebooks. She also suggested that Mrs. Jones have work prepared for the entire classroom period and that she attend a workshop in "Classroom Management", which was being conducted free of charge by the Jefferson Parish School Board.

19.

On October 3, 1980, Mrs. Doris Rappold, personnel evaluator, observed Mrs. Jones' English class. On October 7, Mrs. Rappold discussed with Mrs. Jones the problems Mrs. Jones was having with teaching techniques and classroom management. Mrs. Rappold made suggestions to assist Mrs. Jones in approximately nine different areas.

20.

On October 31, 1980, Ms. Ciolino observed Mrs. Jones' class. A post-observation conference was held between Ms. Ciolino and

Mrs. Jones on November 13, 1980, at which time Ms. Ciolino's findings concerning Mrs. Jones' problems with matters such as classroom management and preparation of lesson plans were discussed.

21.

On November 10, 1980, Mrs. Rappold again observed Mrs. Jones' English class and prepared a report dated November 13, 1980 discussing her observations. Mrs. Rappold made several recommendations for improving Mrs. Jones' performance.

22.

On December 3, 1980, Ms. Goodman again observed Mrs. Jones' class and discussed with her on December 5, 1980 suggestions to improve her teaching technique and classroom management. She again suggested that Mrs. Jones be specific in all directions to students and that she establish a better sequencing of her classroom activities. She again reminded Mrs. Jones that she should be aware of the students' activities during class and, in particular, that she should deal with disrespectful actions on the part of the students immediately rather than ignoring them.

23.

On December 9, 1980, Mr. Sumrall observed Mrs. Jones' class and found some improvement in Mrs. Jones' classroom techniques and management.

24.

On January 23, 1981, Mrs. Rappold observed Mrs. Jones' class and discussed her observations with Mrs. Jones at that time. She again pointed out to Mrs. Jones that her lesson plans must be stated in student objectives and not in teacher objectives. She noted some improvement during the month of December but then she also noted that Mrs. Jones lapsed back into her former incorrect practice during the week of January 9, 1981. She also pointed out that Mrs. Jones showed a lack of knowledge of the subject matter she was teaching with respect to regular and irregular verbs. She discussed again Mrs. Jones' classroom management problems and Mrs. Jones' lack of awareness of student behavior and actions.

She also noted Mrs. Jones' lack of improvement in responding to and implementing suggestions that had been made to her in these areas.

25.

During February 1981, Mrs. Jones violated School Board Guidelines by engaging in the unauthorized sale of candy on school grounds at improper times.

26.

Based upon the recommendations and findings of the principal, Mr. Sumrall, and the various personnel evaluators, Dr. Melvin Gruwell, acting superintendent for the Jefferson Parish School Board, recommended that Mrs. Jones be terminated as a teacher in the Jefferson Parish School District because of her willful neglect of duty and incompetency.

27.

Mrs. Jones received notice of Dr. Gruwell's recommendation that she be terminated in a letter from him dated May 4, 1981. This letter fully explained the deficiencies in Mrs. Jones' performance as a teacher.

28.

Mrs. Jones was kept advised of the problems she was experiencing with classroom management and teaching techniques during both the 1979–80 and 1980–81 school years, as these problems were documented by the various classroom observers.

29.

Mrs. Jones' teaching performance did not improve significantly from 1979 to 1981.

30.

In his letter dated May 4, 1981, Dr. Gruwell informed Mrs. Jones that pursuant to La.Rev.Stat. 17:443 she had the option of a private or a public tenure hearing before the School Board to review Dr. Gruwell's recommendation that she be terminated.

31.

On May 15, 1981 Mrs. Jones informed Dr. Gruwell that she would like a private tenure hearing.

**32.**

On May 26, 1981 Dr. Gruwell informed Mrs. Jones that her tenure hearing was scheduled for June 8, 9, 15, and 16, 1981.

**33.**

Mrs. Jones retained the services of Mr. Larry Samuel, an attorney with the Jefferson Federation of Teachers.

**34.**

Ultimately, Mrs. Jones' tenure hearing was never held in June because Mr. Samuel indicated that Mrs. Jones was going to resign her teaching position.

**35.**

Mrs. Jones did not resign from her teaching position, and thus her tenure hearing was re-scheduled for October 12, 13, and 15, 1981.

**36.**

The recommendation that Mrs. Jones be terminated was based on Mrs. Jones' inferior performance as a teacher.

## CONCLUSIONS OF LAW

**1.**

Jurisdiction in this matter is based on 28 U.S.C. § 1331, and venue is proper.

**2.**

■ Title 42 U.S.C. § 1981 et seq. provides for injunctive relief and damages against persons acting under color of state law who, without due process of law, deprive teachers of a protected property right of continued employment. *Easter v. Olson*, 552 F.2d 252, 253 (8th Cir. 1977); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2706–07, 33 L.Ed.2d 548 (1972).

**3.**

Joycelyn Jones is a tenured teacher in the Jefferson Parish School System and can be removed from office only pursuant to the provisions of La.Rev.Stat. 17:443.

**4.**

Joycelyn Jones, as a tenured teacher, is subject to the provisions of La.Rev.Stat. 17:391.5 and the provisions of the Jefferson Parish School Board Tenured Teacher Evaluation Program.

**5.**

■ Despite the fact that Mr. Sumrall failed to assist Mrs. Jones in establishing her personal goals for the 1979–80 school year, the Jefferson Parish School Board, Ms. Ciolino, Mr. Sumrall, Mrs. Rappold, and Mr. Skorlich "substantially complied" with the due process requirements of La.Rev. Stat. 17:391.5 and the School Board's Tenured Teacher Evaluation Program during the 1979–80 school year and the 1981–82 school year. *Johns v. Jefferson Davis Parish School Board*, 154 So.2d 581 (La.App. 3d Cir. 1963).

**6.**

The Jefferson Parish Public School system's "Non-Tenured Teacher and Tenured Teacher Evaluation Program" provides that if, at any time during the evaluation process the teacher is charged with incompetency or willful neglect of duty, the evaluation procedure as implemented under La.Rev. Stat. 17:391.5 is superseded by La.Rev.Stat. 17:443.

**7.**

■ In recommending that Mrs. Jones be terminated for incompetency or willful neglect of duty, the Jefferson Parish School Board, acting through Dr. Gruwell, complied with the due process requirements of La.Rev.Stat. 17:443. *Johns v. Jefferson Davis Parish School Board*, 154 So.2d 581 (La. App. 3d Cir. 1963).

**8.**

■ There was a rational basis for the determination that Mrs. Jones could not adapt to current instructional procedures and that she was incapable of organizing and carrying on a constructive instructional program. Substantial evidence established Mrs. Jones' incompetence and willful neglect of duty. *Jennings v. Caddo Parish School Board*, 276 So.2d 386 (La.App. 2d Cir. 1973).

**9.**

■ Plaintiffs failed to prove any acts of racial discrimination by the Jefferson Par-

ish School Board or any of its agents or employees directed against the plaintiffs. Any hint of racial prejudice in respect to the recommendation that Mrs. Jones be terminated as a teacher is inconsistent with the facts presented at trial in that Mrs. Jones' problems with teaching were well documented. *Jennings v. Caddo Parish School Board*, 276 So.2d 386 (La.App. 2d Cir. 1973).

10.

Plaintiffs failed to prove their claim that the Jefferson Parish School Board, or any of its agents or employees violated plaintiffs' civil rights.

11.

Plaintiffs failed to prove that a conspiracy existed between the Jefferson Parish School Board or any of its employees or agents and the defendants in the case entitled "Hurie Jones v. John Mitchell, *et al.*," civil action No. 78–110. The court finds their conspiracy claim meritless.

12.

The superintendent and the Jefferson Parish School Board have authority to suspend tenured teachers without pay prior to a timely hearing on the permanent termination of the teacher's employment. Op. Atty.Gen. Jan. 4, 1974. See also, La.Rev. Stat. 17:417; *Reed v. Orleans Parish School Board*, 21 So.2d 895 (Orl.App.1945).

13.

Plaintiffs have failed to produce evidence that would warrant this court to enjoin Mrs. Jones' tenure hearing before the Jefferson Parish School Board.

Accordingly, the clerk shall prepare judgment in favor of defendants, and against, plaintiffs, dismissing this suit at plaintiffs' cost.