554 So.2d 152 (1989)
Barbara GAULDEN, Appellant,
v.
LINCOLN PARISH SCHOOL BOARD, et al, Appellee.
No. 21038-CA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1989.
Writ Denied February 16, 1990.
*153 Jones & Smith by Benjamin Jones, Monroe, for appellant.
R.W. Farrar, Jr., Asst. Dist. Atty., Ruston, for appellee.
Before HALL, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
The plaintiff, Barbara Gaulden, was a tenured teacher at Simsboro High School in Lincoln Parish. At the end of the 1984-1985 school year she was notified by letter that she would not be reemployed for the following year. In accord with LSA-R.S. 17:443, the school board gave her timely notice that the matter of her removal would be heard at the July 1985 school board meeting. The board charged her with willful neglect of duty in two particulars:
(1) not following procedures for keeping her students inside her classroom; and
(2) not following directions to keep her students' cumulative files up to date.
At the tenure hearing Mrs. Gaulden was represented by counsel who cross-examined all the board's witnesses. Before Mrs. Gaulden testified, he requested that she be sworn; when the board refused, he objected. Mrs. Gaulden nevertheless testified. Counsel also argued that remedies under the Public School Accountability Law should have been pursued. At the end of the hearing the board voted 6-5 to remove her.
Mrs. Gaulden petitioned the district court for review, seeking reinstatement with back pay, damages, attorney fees and costs. The case was submitted on the transcript of the tenure hearing and briefs. The district court affirmed and gave written reasons. Mrs. Gaulden now appeals, advancing three assignments of error. For the reasons expressed, we affirm.

Background Facts
During the 1984-1985 school year, Mrs. Gaulden had a seventh grade homeroom class; she also taught several high school science classes. Sometime in January 1985, students from her science classes were seen roving the halls without passes, going into the empty shop, and turning up in other teachers' classrooms. When several teachers complained, the principal, Dr. Gullatt, asked them to keep a list of when these incidents occurred and how many students were involved. One of the teachers, Mrs. Gregory, testified that 10 or 15 minutes into the class period, Mrs. Gaulden's students would come to her class and ask to come in, reporting they were doing nothing in Ms. Gaulden's class. She sometimes let them stay because she felt this was better than letting them roam. Another teacher, Mr. Edmiston, testified that Mrs. Gaulden's students would come to his class and he sometimes sent them back, but within minutes they were in his class again. The final list included 20 days between February 1 and May 24, 1985, always with groups of three to five students. Dr. Gullatt testified that Mrs. Gaulden was warned about this by conferences and letters on January 29 and March 14. There was also a recorded meeting with Superintendent Higginbotham on March 31. Dr. Gullatt said this conduct violated rules printed in the Student Handbook, was annoying to other teachers and could be hazardous to the students.
Mrs. Gaulden testified she was not advised that this was a problem until the May 29 letter advising her of the board's motion to remove her. At the hearing, Mrs. Gaulden meticulously attempted to reconstruct the events of several of the days on which roving students had been sighted. She explained that they could have been going to the library, or going to other classes to work on club projects. She did not explain why she did not issue hall passes on these dates. Dr. Gullatt disputed her explanations as to several of the dates in question.
The other charge was failure to keep students' records current despite repeated warnings. In April 1985 Simsboro High was undergoing accreditation, which comes up only once every ten years; maintaining favorable accreditation was foremost on the school's agenda. One of the items that *154 would be scrutinized was the students' cumulative folders, which were to include seven documents for the current year. By daily announcements dated February 11, 19 and 25, all homeroom teachers were reminded to have these folders "in good order" by March 1. Mrs. Gaulden's were spot-checked on March 1 and found to be incomplete; Dr. Gullatt had a conference with her about it, and she assured him she would take care of it. However, further checks on March 15 and April 25 showed the folders still incomplete. Dr. Gullatt testified that she was not cooperative about the matter, and once stormed out of his office in mid-meeting.
Mrs. Gaulden testified that most of the missing items were bus slips and handbook slips that parents were supposed to read, sign and return; if the parents did not comply, there was nothing she could do about it. She said some items, such as the SRA card, were usually not available until late May; and the cumulative card just contained information already written on the outside of the folder.

Discussion: Assignment No. 1
By her first assignment Mrs. Gaulden urges that the tenure hearing violated her due process rights because the witnesses were not sworn. She concedes that the statute governing removal of tenured teachers, R.S. 17:443, does not specifically require sworn testimony. R.S. 17:443 provides, in pertinent part:
A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency or dishonesty, or of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least twenty days in advance of the date of the hearing, the superintendent with approval of the school board shall furnish the teacher with a copy of the written charges. Such statement of charges shall include a complete and detailed list of the specific reasons for such charges and shall include but not be limited to the following: date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the teacher. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
Mrs. Gaulden analogizes her situation to that of a litigant in a civil or criminal trial or a claimant in an unemployment compensation hearing; witnesses in those proceedings must be sworn. Sworn testimony at a tenure hearing is all the more necessary, she argues, since the board's ultimate action is "administrative capital punishment."
We note at the outset that Mrs. Gaulden's position on appeal is different from that advanced at the tenure hearing. There she requested only that she be sworn; here she complains that no witnesses were sworn. In fact, the request was not lodged at the beginning of the hearing, when the board could have complied, but rather after the board's witnesses had testified. In short, Mrs. Gaulden never advanced the specific request to have all witnesses sworn, and her limited request was not timely advanced. Ordinarily, objections pertaining to the reception of evidence and the examination of witnesses must be timely or they are considered waived. See, e.g., Circello v. GEICO, 425 So.2d 239 (La.App. 1st Cir.1982), writ denied 429 So.2d 145 (La.1983); Brocato v. Brocato, 364 So.2d 152 (La.App. 3d Cir. 1978).
*155 We have considered the substantive question of whether sworn testimony at a tenure hearing is an essential requirement of due process; the board concedes the precise issue is res nova in Louisiana, although a few jurisdictions have resolved the question favorably to the board's position.[1] The board further urges that when the district court "reviews" a school board's action at a tenure hearing, the parties may introduce additional evidence. Howell v. Winn Parish Sch. Bd., 332 So.2d 822 (La.1976). The board asserts that Mrs. Gaulden did not present any evidence to the district court that the witnesses were untruthful at the hearing; under the circumstances, there is no denial of rights.
A tenured teacher has a constitutionally protected property interest in continued employment. Franceski v. Plaquemines Parish Sch. Bd., 772 F.2d 197 (5th Cir.1985), citing Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). All that federal due process requires, however, is that the teacher be given notice and an opportunity to be heard prior to termination. The federal appeals court in Franceski enumerated the plaintiff's constitutionally protected rights:
[S]he received a notice of her tenure hearing, a copy of the charges levelled against her and the expected adverse testimony, as well as the opportunity to present evidence on her own behalf at the hearing before the Board voted on her dismissal. No more process was due. 772 F.2d at 199.
The court did not mention sworn testimony as an essential element of the teacher's due process rights. The Fifth Circuit's analysis is completely consistent with this court's in Cunningham v. Franklin Parish Sch. Bd., 457 So.2d 184 (La.App. 2d Cir.1984), writ denied 461 So.2d 319 (La. 1984), as well as with other reported cases. Summers v. Vermilion Parish Sch. Bd., 493 So.2d 1258 (La.App. 3d Cir.1986), writ denied 497 So.2d 312 (La.1986); Lewis v. East Feliciana Parish Sch. Bd., 372 So.2d 649 (La.App. 1st Cir.1979), writ denied 375 So.2d 959 (La.1979). Sworn testimony at a teacher removal hearing does not appear to be mandated by due process.
Naturally, swearing witnesses at such a hearing should be the preferred procedure. The burden of administering oaths strikes us as minimal, and the end result would be testimony less susceptible to attack. However, Mrs. Gaulden's request for sworn testimony was neither accurately nor timely advanced and we can find no clear constitutional mandate for swearing at tenure hearings. Thus we can find no abuse of her rights. Moreover, there is no showing of prejudice. Mrs. Gaulden concedes that the board's witnesses were effectively cross-examined and stood by their testimony; she has never contended or attempted to prove in the trial court that any of them was dishonest. Considering the deficiencies of Mrs. Gaulden's requests, the absence of a due process violation, and the lack of prejudice, this issue does not mandate reversal of the district court's judgment.

Assignment No. 2
By this assignment Mrs. Gaulden urges the trial court erred in finding that the school board had substantially complied with the Public School Accountability and Assessment Law, LSA-R.S. 17:391.1 et seq.
The Accountability Law was passed in 1977 with the stated legislative intent to "provide for the establishment of procedures for shared educational accountability in the public educational system" of the state and to "provide for a uniform system of evaluation of performance of school personnel." § 391.1(1), (3). This law establishes *156 a system of "assessment and evaluation of competence of certified teachers." § 391.5A(2).[2] It requires that every tenured teacher be evaluated at least every three years. § 391.5C. It further provides:
In the event an employee is considered not performing his duties in a satisfactory manner then the employing authority shall notify the employee in writing of such determination and describe such nonperformance. The employing authority shall thereafter confer with the employee making specific recommendations as to areas of considered unsatisfactory performance of the employee and to assist him to correct such considered deficiencies within a prescribed period of time. Assistance may include but not be limited to in-service training programs or such other appropriate programs. § 391.5C.
Pursuant to this law, the Lincoln Parish School Board adopted accountability regulations which called for a remediation plan whenever a certified teacher received an unfavorable evaluation. See Ex. Gaulden-10. Mrs. Gaulden argues that the board's only effort at "remediation," giving her a one-page list of reference books to read, came nowhere near the relief contemplated by either the statute or the board's own regulations. We are inclined to agree. If the board's complaints were based on allegations of incompetence, then their action in submitting to her a one-page list of books (which was not delivered until six weeks after the January 29 conference) would probably not suffice as a plan of remediation. It is totally lacking in "specific recommendations as to areas of * * * unsatisfactory performance." This failure, however, is not dispositive of the major issue.
The board contends that, contrary to the trial court's holding, the Accountability Law is not relevant to a tenure hearing under R.S. 17:443. The board concedes once again that there is no caselaw directly addressing the interplay of § 391.5 and § 443, although a few cases have declined to reach the issue. See State ex rel. Franceski v. Plaquemines Parish Sch. Bd., 416 So.2d 150 (La.App. 4th Cir.1982), writ denied 421 So.2d 907 (La.1982); Jones v. Jefferson Parish Sch. Bd., 533 F.Supp. 816 (E.D.La.1982), aff'd 688 F.2d 837 (5th Cir.1982), cert. denied 460 U.S. 1064, 103 S.Ct. 1514, 75 L.Ed.2d 941 (1983). We cannot agree with the board's broad statement that § 391.5 has no relevance to any tenure hearing; however, in this particular case, it had none.
We have carefully examined the language of both statutes. § 391.5 establishes triennial evaluations for tenured, certified teachers. Evaluations are based on "competence * * * as it relates to the established criteria." An unsatisfactory evaluation is therefore based on perceived incompetence. A teacher receiving such an evaluation must be afforded the remedies outlined in § 391.5. Lincoln Parish's accountability regulations provide that dismissal for incompetence must be preceded by remediation. If remedial efforts do not bring about an improvement in a tenured teacher, the board may resort to the tenure law. Ex. Gaulden-10, p. 7a.
By contrast, § 443 covers more ground. It sets out four bases for removal of a tenured teacher:
(1) willful neglect of duty;
(2) incompetency;
(3) dishonesty; and
(4) being a member of, or contributing to, a "prohibited" group or organization.
We conclude that when the issue is incompetence, § 391.5 applies and should be complied with before dismissal proceedings are initiated under § 443. However, when the complaint is one of willful neglect of duty or dishonesty, there is no application of § 391.5. Instead, § 443 governs these proceedings. Reading these statutes together, *157 we think the practical aspect of the distinction is clear. The board should attempt to work out problems, pursuant to § 391.5, with a teacher who is merely claimed to be incompetent. The board should not, however, have to comply with the remedial procedures authorized by § 391.5 when it seeks to dismiss a teacher who is alleged to be dishonest or willfully neglectful of his duty.[3]
In the instant case the grounds of removal were not incompetence. Rather, the board alleged that after repeated instructions to update cumulative files and to keep her students inside her own classroom, she refused or failed to comply. These charges were properly classed as willful neglect of duty. Remediation under § 391.5 was not required.
In sum, the trial court erred in holding that the board had to comply with the Accountability Law and in further holding that there was substantial compliance. However, the trial court's judgment had the effect of dismissing Mrs. Gaulden's claim of relief under the Accountability Law, and this result is correct. This issue does not mandate reversal.

Assignment No. 3
By this assignment Mrs. Gaulden urges the action of the board was not based on substantial evidence and the trial court erred in finding otherwise.
The standard of judicial review of a school board's tenure hearing is whether it was conducted in accordance with the formalities of the tenure law, LSA-R.S. 17:441-445, and whether the decision is supported by substantial evidence. Howell v. Winn Parish Sch. Bd., supra; Lewing v. DeSoto Parish Sch. Bd., 238 La. 43, 113 So.2d 462 (1959). In such cases the reasons for dismissal are largely in the sound discretion of the school board; its judgment will not be disturbed absent a clear showing of abuse of discretion. State ex rel. Piper v. East Baton Rouge Parish Sch. Bd., 213 La. 885, 35 So.2d 804 (1948); Lewis v. East Feliciana Parish Sch. Bd., 452 So.2d 1275 (La.App. 1st Cir.1984), writ denied 458 So.2d 123 (La.1984). The court must give great deference to the board's findings of fact and credibility. Wiley v. Richland Parish Sch. Bd., 476 So.2d 439 (La.App. 2d Cir.1985).
Mrs. Gaulden begins by reiterating her first two arguments. Unsworn testimony, she argues, renders the evidence at the tenure hearing "not substantial"; however, there was no due process violation, so this testimony was properly considered. She also argues that no evidence should have been taken until the board effected a plan of remediation, but this argument is also without merit. We therefore turn to the issue of whether the board could remove Mrs. Gaulden on the basis of this record.
Mrs. Gaulden claims she received no specific notice that her roving students were a problem until the letter of dismissal on May 29. Failure to give timely notice of an alleged deficiency will sometimes absolve the teacher. Lewing v. DeSoto Parish Sch. Bd., supra. Mrs. Gaulden concedes that a letter of March 14 admonished her to take "control of the students in your class" but insists this did not apply to the students in the hall and elsewhere. However, Dr. Gullatt testified he had discussed this matter, together with other problem areas, with Mrs. Gaulden on January 29 and March 1. The implication is that any lack of specificity in the letter was rectified, and the issue made clear, in the discussions. The board was entitled to accept Dr. Gullatt's version. Moreover, general warnings are adequate against conduct that the teacher should know is unacceptable. Simon v. Jefferson Davis Parish Sch. Bd., 289 So.2d 511 (La.App. 4th Cir.1974), writ denied 293 So.2d 178 (La. 1974); Wiley v. Richland Parish Sch. Bd., supra. The board members were entitled *158 to find that keeping students in the classroom is a fundamental duty for teachers; issuing passes for the exceptions is required by the Handbook.
Mrs. Gaulden also contends the deficiencies in her cumulative folders were excusable and were, at any rate, too trifling a matter to justify dismissing her. Under other circumstances this argument might be meritorious. However, Dr. Gullatt established that decennial accreditation was coming that spring and that loss of accreditation would be so devastating to the school that no effort could be spared to assure favorable results. Complete and current cumulative records were a critical item. Dr. Gullatt repeatedly stressed the importance of completing the folders. The board surely understood the situation. Mrs. Gaulden admitted that Dr. Gullatt was "pressing" the matter. And yet she did not complete her records timely. This failure or refusal to comply, in the face of repeated reminders and warnings, can be called willful. The school board was undoubtedly familiar with the possible consequences. We cannot say the board abused its sound discretion in finding that these infractions in these circumstances merited the action taken. Lewis v. East Feliciana Parish Sch. Bd., supra.
Mrs. Gaulden finally contends the charges against her were unfair, as they were spawned by parent pressure and racist motives. According to her testimony, the whole problem started in late January when she conducted a certain exercise in her chemistry class. She called several students to the blackboard to balance chemical equations; one student, a "well-connected white female student," started crying because she could not solve hers. Mrs. Gaulden testified that the girl's parents and others complained to Dr. Gullatt and pressured him into levelling charges against her. During most of their conferences, Dr. Gullatt complained of several other problem areas besides the two that were ultimately urged as grounds of dismissal. Mrs. Gaulden infers from the abandonment of so many other complaints that the entire "prosecution" was fabricated. We note, however, that Mrs. Gaulden offered no evidence to substantiate her contention that Dr. Gullatt's motives were improper. No corroborating witnesses were called and Dr. Gullatt was not even questioned about the matter. We also note that Mrs. Gaulden's testimony as to what went on between Dr. Gullatt and certain parents is itself hearsay. We cannot conclude that the board was in error to reject this contention. Moreover, the board proved two counts of willful neglect of duty; their decision not to press other charges, probably of incompetence, is therefore of no moment.
The evidence against Mrs. Gaulden was not insubstantial and the board did not abuse its wide discretion in voting to dismiss her. The trial court did not err in upholding this action. The judgment is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Apparently based on research in 79 C.J.S. Schools § 204 d (1952), the board has cited cases from other states that have rejected a call for sworn testimony at tenure hearings in the absence of prejudice. See Hayslip v. Bondurant, 194 Tenn. 175, 250 S.W.2d 63 (1952), and School Dist. No. 1 in Arapahoe County v. Thompson, 121 Colo. 275, 214 P.2d 1020 (1950). See also Anthony v. Phoenix Union High Sch. Dist., 55 Ariz. 265, 100 P.2d 988 (1940), overruled on other grounds in Johnson v. Board of Educ., 101 Ariz. 268, 419 P.2d 52 (1966). A Louisiana court of appeal has cited the Thompson case, supra, in dictum yet with approval. Fleming v. Concordia Parish Sch. Bd., 275 So.2d 795 (La.App. 3d Cir. 1973), writ denied 279 So.2d 204 (La.1973).
[2] The "Louisiana competency-based education program," which was established to coordinate the Accountability Programs, serves to aid in "identifying teachers in need of professional improvement" and in aiding them in "improving their teaching competency." LSA-R.S. 17:24.3 A; 17:24.4.
[3] Ms. Gaulden's suit is not, strictly speaking, one to enforce an accountability program. We would note, however, that enforcement ultimately devolves to the state Board of Elementary and Secondary Education, LSA-R.S. 17:391.10 B. The state Board may not infringe on a local school board's right to hire and fire teachers. LSA-Const. art. 8, § 3(A) (1974); Johnson v. Board of Elem. & Secondary Educ., 414 So.2d 352 (La.1982).