# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 23-476

IN RE:

ROKEETA RICHARD

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 93,545A
HONORABLE DESIREE DUHON DYESS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Gary J. Ortego, Judges.

AFFIRMED.

**Jill L. Craft**
**W. Brett Conrad, Jr.**
**Jovontee J. Curlee**
**Attorneys at Law**
**329 St. Ferdinand Street**
**Baton Rouge, LA 70802**
**(225) 663-2612**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Rokeeta Richard**

**Thomas M. Hayes, IV**
**Benjamin D. Jones**
**Hammond, Sills, Adkins, Guice, Noah & Perkins, LLP**
**1881 Hudson Circle**
**Monroe, LA 71201**
**(318) 324-0101**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Natchitoches Parish School Board**

**GREMILLION, Judge.**

Rokeeta Richard appeals the decision of the district court that upheld her termination from employment as a non-tenured teacher by the Natchitoches Parish School Board (NPSB). For the reasons that follow, we affirm the district court's judgment.

## FACTS AND PROCEDURAL POSTURE[1]

Ms. Richard was employed as a non-tenured teacher by NPSB for approximately five years. In June of 2020, Ms. Richard was diagnosed with stage 4 metastatic breast cancer. In August of 2021, she began teaching virtually at Natchitoches Virtual Academy. The principal of the virtual academy was Kristie Irchirl.

The virtual academy faculty were involved in a professional development program on August 9, 2021, during which they were familiarized with the "Instructional Staff Responsibilities and Expectations," which set forth the school's policies governing teachers. Among these expectations is grading, set forth in a section entitled, "Grading & Grade Entry in JCAMPUS." That section provides, "Teachers shall transfer all grades from Edgenuity into JCAMPUS. This should be done at least twice a week, if not daily to keep up with grading."

Issues arose involving the entry of student grades in December 2021, as documented by several emails between Mr. Irchirl and Ms. Richard. On Tuesday, December 7, Ms. Irchirl sent an email to all faculty reminding them that the term was ending the following week, and all grades should be entered by the week's end. Ms. Irchirl sent an email to Ms. Richard indicating that twenty-one students had no grades posted to the computer system. By Sunday, December 12, Ms. Irchirl noticed

---

[1] At the judicial review hearing, NPSB filed a number of exhibits to which Ms. Richard objected. Our review will be limited solely to the material contained in the administrative record produced by NPSB.

that several students' grades still had not been posted, and she emailed Ms. Richard. Ms. Richard documented that her students' civics grades had been updated, but their health grades had not because the students were still completing assignments. She also sent screenshots documenting the entry of the grades in civics.

On January 26, 2022, Ms. Irchirl received an email from a concerned parent who wrote to complain of her daughter's grades in her food and nutrition class. The parent had emailed the teacher and received no response. The parent also complained that when the student began taking a test, "what she read does not match the questions being asked[.]"

Another issue involving grade entries arose in February 2022.

On Monday, March 7, 2022, Ms. Irchirl emailed the faculty and advised them that grades for that period would be due by 8:00 a.m. the following Monday. She advised that she would not be unlocking the system to accommodate teachers who had failed to post grades by that deadline. On Sunday, March 13, Ms. Irchirl advised Ms. Richard that twenty-three students had no grades posted. She reminded Ms. Richard that grades were due at 8:00 a.m. the following morning.

On Tuesday, March 15, 2022, Ms. Irchirl sent an email to Ms. Richard indicating stating:

> I noticed that you didn't put in any of your Midterm Exam Grades in JCAMPUS for report cards. However, I took care of that for you last night. Moving forward, don't forget that this is always part of the 2nd quarter for each semester. For those students whose Cumulative exam was due for today – I averaged their unit tests for the course. Let me know if you have any questions.

A student emailed Ms. Irchirl with a question about her English and Language Arts class and a group discussion assignment. Ms. Irchirl replied and asked the student whether she had contacted Ms. Richard. The student had emailed Ms.

Richard twice with no response. Ms. Irchirl then emailed Ms. Richard, who indicated that she had received the emails while at the hospital.

Ms. Irchirl emailed Ms. Richard on Friday, April 8, 2022, to ask whether she could come to the virtual academy to sign her letter of intent to return for the 2022-2023 school year. On Monday, April 11, Ms. Richard emailed Ms. Irchirl expressing her distress from a meeting between them that day and the fact that Ms. Irchirl had told her she was going to be terminated because of her illness. Ms. Irchirl emailed her back advising that she had not terminated her.

On Wednesday, April 20, Ms. Irchirl forwarded another email to Ms. Richard about missing grades and the fact that report cards would be printed on April 25. A particular student's parent called to ask about her grades, because the student only had grades entered in one class. Ms. Richard replied that she would take care of it. Later the same afternoon, Ms. Irchirl again emailed Ms. Richard:

> I ran reports on JCAMPUS. All of your students have no grades for 3 out of 4 classes except Cri. Bro. She is missing two grades for grading period 7. 1 know you were in the hospital a couple of weeks ago and I really wish the best for you. However, you need to begin entering grades today. I see that you have some of the assignments listed in some of your classes but no grades. You have some classes that you need to input both the assignments and grades. Remember, students and parents should be able to see JCAMPUS grades and progress weekly. Last grading period, I helped you to make sure all Midterm Exam grades were in. I know this may be hard for you to keep up with the demands for your health and school work as well. Since you have been out, it seems as though you have struggled each grading period with keeping your grades updated. Please let me know how we can assist you with this so it doesn't continue to happen.

Ms. Richard replied that she would have all grades entered by April 22, the deadline. She further indicated that she would have input the Midterm grades had Ms. Irchirl mentioned them prior to the Sunday before they were due. This, of course, ignored the March 7 email Ms. Irchirl sent to all faculty, one week before Ms. Richard claimed she was notified in her April 20 email.

On May 24, 2022, Ms. Richard signed a contract for employment for the 2022-2023 school year. Her evaluation by Ms. Irchirl was submitted that day. The evaluation found that Ms. Richard was rated as Effective: Emerging. Areas of weakness were noted, particularly "struggles with inputting student grades in a timely manner[.]" It noted that Ms. Irchirl had input grades for Ms. Richard and that grades were missing for many students in many classes in the week grades were to have been reported. Ms. Irchirl also indicated that she had received "multiple complaints regarding your communication with parents and students[,]" and that Ms. Richard had become less communicative with Ms. Irchirl.

Linda Page, the Human Resources Director of NPSB, spoke with Ms. Richard on June 9, 2022. She offered Ms. Richard an opportunity to resign or take a leave of absence and return when her health improved. The record diverges regarding this meeting. Emails submitted by both Ms. Richard and NPSB demonstrate that Ms. Richard's interpretation of the meeting was that Ms. Page had offered her the option to either resign or be fired. The parties, however, do not dispute that this was subject to Ms. Richard returning after she was well and able to perform her teaching tasks.

On July 18, 2022, Ms. Richard emailed Ms. Page. In that post, she stated:

> I am contacting you because last time you called me on June 9, we spoke on the phone via FaceTime you informed me that since I had cancer, if I did not quit, you would fire me because I wasn't capable of working even the jobs I wanted beyond all the hard work I did through the virtual academy and I told you quitting wasn't an option for me and you said you had no choice but to fire me. I am trying to see where my pink slip is since you said you were going to fire me and I didn't have a job at Natchitoches Parish School Board any longer? I would appreciate a prompt response in this matter.

Ms. Page responded that she had tried to call Ms. Richard several times and that she was mischaracterizing the conversation. Ms. Richard then replied that her characterization was correct, that her problems were due to a "personal vendetta of Miss Irchirl," and that she had performed the work of others at the virtual academy

when they were absent.  Since Ms. Page had told her that unless she quit, she would be fired, Ms. Richard saw no purpose in answering Ms. Page's calls.

Dr. Grant Eloi, Superintendent of NPSB, wrote an August 3, 2022 letter to Ms. Richard outlining seven reasons for which she might be subjected to disciplinary action:

1) Failure to place grades for 18 of your 21 students in all four of your courses during the 2nd quarter (December 2021).

(2) Failure to adequately complete student grades in March for grading period 6.  Twenty-three of your thirty-two students were missing grades in one or more courses.

(3) Failure to enter any midterm grades for your students.

(4) Failure to provide grades for your students during grading period 7.

(5) Failure to update grades weekly as provided in the handbook.

(6) The teacher refused to answer any phone calls from the Principal during school hours, even when she was allowed to work from home about the Principals concerns.

(7) On April 24th, 2022 you failed to let your Principal know in a timely manner that your grade book was locked, though you knew it was, thus not allowing you to enter grades for progress reports for marking period 4.

At that time, Ms. Richard was placed on paid administrative leave.  She was advised by Dr. Eloi that she had seven days in which to respond, after which he would notify her of his decision.

On August 12, 2022, Ms. Richard responded, "In response to the letter written by you and given to me on August 3, 2022 by Linda Page witnessed by Shenita Nolley.  All of the allegations are Unsubstantiated.  Thank you."

By letter dated August 15, 2022, Dr. Eloi informed Ms. Richard of his decision:

On August 5th, 2022, 1 provided you with a letter detailing eight (8) concerns relative to your performance.  Such letter also informed

5

you that, based upon those reasons, I was contemplating disciplinary action against you, including your possible termination. You were afforded seven (7) days to respond to the allegations.

On August 12th you responded via an email in which you simply stated that all the allegations concerning your employment were "unsubstantiated." You did not go into any further detail, nor did you dispute the claims in any specific manner.

Based on the reasons outlined in my initial letter and the available information, coupled with your failure to dispute them in any specific manner and your failure to provide any additional information, it is my determination that the concerns/reasons are substantiated. Accordingly, I am terminating your employment with Natchitoches Parish School Board effective Tuesday, August 16th, 2022.

A copy of my initial letter, your response, and this letter will all be placed in your personnel file. You have sixty (60) days from your receipt of this letter within which to seek a review of my decision by the District Court, should you so desire.

While I regret having to make this decision, I believe it to be in the best interest of the District and the students it serves.

Ms. Richard did seek judicial review of Dr. Eloi's decision by the Tenth Judicial District Court. In her petition for judicial review, Ms. Richard maintained that she was fired solely because of her illness. She also complained that she was denied a meaningful opportunity to respond because her gradebook had been locked by NPSB. She also complained that Dr. Eloi had considered eight reasons for her termination, and she was not given notice of an eighth reason. All of these actions, Ms. Richard argued, violated her due process rights under La.R.S. 17:443 and the 14th Amendment to the United States Constitution.

The trial court rendered a judgment with incorporated written reasons in which it upheld the superintendent's decision. Contrary to Ms. Richard's argument, she was not vested with a property interest in her employment as a non-tenured teacher. Even if she were, Ms. Richard was afforded due process in her termination. The trial court found that Dr. Eloi's actions were neither arbitrary nor capricious, and Ms. Richard's termination was upheld.

## ASSIGNMENTS OF ERROR

Ms. Richard asserts that the following errors warrant reversal:

1. The Lower Court erred by rejecting Mrs. Richard's rights to notice of the alleged charges, explanation of the employer's evidence, and meaningful opportunity to respond before she was fired.

2. The Lower Court erred by applying the wrong standard of review as set forth under La. R.S. 17:443 and applicable jurisprudence.

3. The Lower Court erred by upholding Mrs. Richard's termination based on evidence that was not considered by the Superintendent.

4. The Board's discipline was arbitrary and capricious as the evidence shows Mrs. Richard was terminated because of her cancer and she did not violate policy.

## DISCUSSION AND ANALYSIS

*Assignment of Error 1*:

Discipline of teachers is governed by La.R.S. 17:443. Subsection (A) provides for the procedures for disciplining a non-tenured teacher:

> A. The school superintendent may take disciplinary action against any nontenured teacher after providing such teacher with the written reasons therefor and providing the teacher the opportunity to respond. The teacher shall have seven days to respond, and such response shall be included in the teacher's personnel file. The superintendent shall notify the teacher in writing of his final decision. Within sixty days of such notice, the teacher may seek summary review in a district court pursuant to Code of Civil Procedure Article 2592. The district court's review shall be limited to determining whether the action taken by the superintendent was arbitrary or capricious.

Non-tenured teachers are at-will employees of the school board. La.R.S. 17:442(B).

The protection afforded non-tenured teachers has been addressed by this court before, and is summarized as follows:

> The Louisiana Constitution and legislature entrust the administration of the school system to the parish school boards and not to the courts. The School Board is vested with broad discretion in the administration of the school system; nevertheless, due process requires judicial review to ensure that the school boards do not abuse this discretion. Judicial review is limited, and where there is a rational basis, which is supported by substantial evidence for the school

7

board[']s discretionary determination, the courts cannot and should not substitute their judgment for that of the school board. *Scott v. [O]uachita Parish Sch. Bd.,* 768 So.2d 702, 711 (La.App. 2 Cir.2000); *Myres v. Orleans Parish School Board,* 423 So.2d 1303 (La.App. 4 Cir.1982), *writ denied,* 430 So.2d 657 (La.1983).

The Supreme Court has accepted the following definition of "substantial evidence:"

> ['"]Substantial evidence['] has been defined as [']evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions.'" (citations omitted) *Wise v. Bossier Parish School Board,* 851 So.2d 1090, 1094 (La.2003).

The district court must give great deference to the school board[']s findings of fact and credibility. *Arriola v. Orleans Parish Sch. Bd.,* 809 So.2d 932, 941 (La.2002). The district court may not substitute its judgment for that of the school board or interfere with the school board's good faith exercise of discretion. *Howard v. W. Baton Rouge [Parish] Sch. Bd.,* 793 So.2d 153 (La.2001). Thus, the school board[']s judgment should not be reversed in the absence of a clear showing of abuse of discretion. *Gaulden v. Lincoln Parish School Board,* 554 So.2d 152, 157 (La.App. 2 Cir.1989), *writ denied,* 559 So.2d 126 (La.1990).

The School Board is given great discretion in fashioning, adopting[,] and implementing its plan[,] and the standard of review used by courts when called upon to review whether a school board complied with its own policies is substantial compliance. *Harris v. West Carroll Parish School Board,* 605 So.2d 610 (La.App. 2 Cir.1992). Reasons for dismissal are largely in the sound discretion of the school board. *Gaulden, supra.* General warnings are adequate against conduct that the teacher should know is unacceptable. *Gaulden, supra; Wiley v. Richland Parish Sch. Bd.,* 476 So.2d at 439 (La.App. 2 Cir.1985). It is also well established that determinations of credibility are within the purview of the school board. *Gaulden, supra; Wiley, supra.*

VENTROY, as a non-tenured employee of the BOARD, did not have a constitutionally protected property interest in her continued employment and, therefore, was not entitled to due process over and above that provided by the School Board's policy. See *Scott v. Ouachita Parish School Board, supra.*

*Ventroy v. Lafayette Parish Sch. Bd.*, 08-1249, pp. 4-5 (La.App. 3 Cir. 4/1/09), 6

So.3d 1039, 1043(alterations in original). In accordance with *Ventroy*, Ms. Richard

did not have a property interest in her employment with NPSB, as she did not hold tenure. Her first assignment of error lacks merit.

*Assignment of error 2*:

Ms. Richard argues that the trial court applied the wrong standard in affirming the superintendent's decision: "the Lower Court applied a more onerous standard holding that all that was required to uphold Mrs. Richard's termination was 'credible evidence in support of any one ground for Mrs. Richard's dismissal.'" She correctly states that the district court's role in her case is to determine whether the superintendent's actions were arbitrary or capricious. La.R.S. 17:443(A).

> Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. See *Burst v. Bd. of Com'rs Port of New Orleans,* 93-2069 (La.10/7/94), 646 So.2d 955, *writ not considered,* 95-265 (La.3/24/95), 651 So.2d 284. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. A conclusion is "capricious" when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. *Coliseum Square Association v. City of New Orleans,* 544 So.2d 351, 360 (La.1989).

*Wise,* 851 So.2d at 1094. "Substantial evidence" is "'evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions.'[] *Coleman v. Orleans Parish School Bd.,* 93-0916 (La.App. 4 Cir. 2/5/97), 688 So.2d 1312, 1315[.]" *Id.*

In the present matter, we find that the exchanges of emails and other evidence submitted to the district court constitute substantial evidence. As such, the superintendent's decision was not capricious. We further find that the evidence was properly weighed. Ms. Richard did not attempt to rebut the allegations; accordingly, the only evidence before Dr. Eloi was that submitted to him by Ms. Richard's supervisors. He was presented with no substantiated competent evidence against which to weigh those allegations.

Neither the trial court nor this court are free to substitute their judgments for that of the superintendent. Our sole task is to ensure the superintendent does not abuse his discretion in personnel matters involving nontenured teachers. La.R.S. 17:443(A). Even if the superintendent relied in part on an eighth reason, we find that he did not abuse his discretion when the other seven reasons or any one of them are proven. This assignment of error lacks merit.

*Assignments of Error 3 & 4*:

Ms. Richard contends:

> Here, Ms. Richard was only given a conclusory listing of seven (7) alleged reasons for proposed discipline. She was given no actual description of her alleged conduct, including a description of:
>
> - which 18 students she allegedly failed to input grades during 2nd quarter? (Charge No. 1);
>
> - which 23 students she allegedly failed to input grades for grading period 6, when was the deadline for inputting grades for grading period 6, and which courses did not have grades input? (Charge No. 2);
>
> - when was the deadline for inputting midterm grades? (Charge No. 3);
>
> - which grades during grading period 7 did she fail to input and when was the deadline to do so? (Charge No. 4);
>
> - which grades did she fail to update and where in the handbook does it state she was required to update grades on a weekly basis? (Charge No. 5);
>
> - what phone calls did she allegedly refuse to answer and when? (Charge No. 6); and
>
> - when should Mrs. Richard have let Principal Irchirl know her grade book was locked? (Charge No. 7).

We note that La.R.S. 17:443(A) does not require that the written reasons for disciplining a nontenured teacher include the documentation on which the superintendent relies. *Booker v. Richland Parish Sch. Bd.*, 393 So.2d 785 (La.App. 2 Cir. 1981). "[S]ome factual declarations" are all that is required. *Id*. at 790.

10

Ms. Richard indicates that she was deprived access to the JCAMPUS records, grade book, and phone logs. She does not contend that she was deprived of access to her emails, though. The emails of December 9, 2021 and March 13, 2022 from Ms. Irchirl to Ms. Richard itemized the students whose grades were not entered and the classes for which they were not entered. The email from April 20, 2022, from Ms. Irchirl documented that none of Ms. Richard's students had grades entered.

The deadline for entering the midterm grades in March 2022 were conveyed by email from Ms. Irchirl to all faculty on March 7. Teachers, including Ms. Richard, were advised that grades were required to be entered "at least twice a week, if not daily" during the professional development program held on August 9, 2021.

Ms. Richard cites a plethora of cases in which specificity was required. However, several of these cases involved the disciplining of police officers.[2] Police officers in municipalities of between 13,000 and 250,000 population are subject to civil service law. La.R.S. 33:2471. Cases involving these officers are not analogous, much less binding, in cases involving nontenured teachers. Similarly, the principal dismissed by the school board in *Johns v. Jefferson Davis Sch. Bd.*, 154 So.2d 581 (La.App. 3 Cir. 1963) was tenured. As previously discussed, the law treats tenured teachers differently than it does nontenured teachers. Lastly, *Webb v. Dep't of Pub. Safety & Permits*, 543 So.2d 582 (La.App. 4 Cir. 1989), involved an employee who was classified under civil service law. In short, Ms. Richard can point to no case in which a nontenured employee was held to have been entitled to protections equivalent to a tenured employee, and for one simple reason: nontenured teachers have no protected property interest in their continued employment. *Ventroy,* 6 So.3d 1039.

---

[2] *Middleton v. City of Natchitoches*, 06-1531 (La.App. 3 Cir. 4/4/07), 954 So.2d 356; *Cannon v. City of Hammond*, 97-2660 (La.App. 1 Cir. 12/28/98), 727 So.2d 570; *Procell v. City of Baker Police Dep't*, 19-1523 (La.App. 1 Cir. 11/12/20)(unpublished opinion).

Ms. Richard also complains of the phantom "eighth" reason for her termination. Discounting the possibility that the letter from Dr. Eloi on August 15, 2022, contained a typographical error,[3] we note that regardless of whether there were seven or eight—or just one—stated grounds for termination, proof of any one ground suffices. *Wise*, 851 So.2d 1090. The courts ought not second-guess the superintendent's decisions; what fosters or impairs a positive learning environment lies beyond our expertise and mandate under La.R.S. 17:443. Our role is simply to determine whether those decisions are arbitrary or capricious. As noted above, substantial evidence supported the superintendent's decision. That Ms. Richard failed to enter grades in a timely manner, as outlined in the policies and procedures covered in the August 9, 2021 faculty professional development meeting, was supported by substantial evidence in the form of emails, including those authored by Ms. Richard. Grading irregularities constituted five of the seven reasons set forth in the August 3, 2022 letter from Dr. Eloi. These assignments of error lack merit.

## SUMMARY

Nontenured teachers do not enjoy the same protections as tenured teachers. The law requires only that they be provided with the written reasons for disciplinary action and given the opportunity to respond within seven days. The superintendent must notify the teacher in writing of his final decision. Within sixty days of such notice, the teacher may seek summary review in a district court pursuant to Code of Civil Procedure Article 2592. The district court's review is limited to determining whether the action taken by the superintendent was arbitrary or capricious.

In determining whether the superintendent's decision was arbitrary or capricious, the courts look to determine whether it was supported by substantial

---

[3] That letter also stated that his original letter was dated August 5, 2022, when it was, in fact, dated August 3, 2022, so perhaps proofreading was not strongly prioritized.

12

evidence. Here, substantial competent evidence demonstrated that Ms. Richard experienced difficulties in entering her students' grades in a timely fashion. She maintains that she was terminated solely because of her health problems. And the court cannot discount the possibility that her job performance problems were health-related; however, her students cannot be made to bear the burden of Ms. Richard's health problems.

The judgment of the trial court is affirmed. All costs of this appeal are taxed to Plaintiff/Appellant, Rokeeta Richard.

**AFFIRMED.**