972 So.2d 376 (2007)
Levon LEBAN
v.
ORLEANS PARISH SCHOOL BOARD.
No. 2007-CA-0571.
Court of Appeal of Louisiana, Fourth Circuit.
November 21, 2007.
*377 Charles M. Samuel, III, Rittenberg Samuel & Phillips, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
Philip A. Costa, Costa Law Firm (APLC), New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE, and Judge LEON A. CANNIZZARO, JR.).
DENNIS R. BAGNERIS, SR., Judge.
The plaintiff, Levon LeBan, was dismissed as a tenured classroom teacher for willful neglect of duty and immorality by the Orleans Parish School Board ("OPSB") on December 16, 2003. Mr. LeBan petitioned the district court for review of OPSB's decision. The district court reversed OPSB's dismissal of Mr. Leban and ordered that the OPSB reinstate all lost benefits to him. For the following reasons, we affirm the judgment of the district court.
FACTS
Mr. LeBan was a tenured teacher who had been employed by OPSB since the 1981-82 school year. On April 30, 1996, Ms. Antoinette Miller, one of Mr. LeBon's biology students at Walter S. Cohen Senior High School, accused Mr. LeBon of sexual harassment. On May 1 and May 3, 1996, the school principal, Leroy Gray, convened a "Level 1" conference with Mr. LeBan to inform him that a complaint had been made and, at that time, Mr. LeBan denied the accusations. Although Ms. Miller did not attend the "Level 1" conference, Mr. LeBan alleges that Mr. Gray recorded Ms. Miller's "full statement", and that he played the recorded statement to him at that time. Mr. Gray then forwarded *378 the complaint to the OPSB Compliance Department for an investigation. Mr. Joseph Falls, a representative from the OPSB Compliance Department then visited the school and prepared a report.[1] However, the OPSB did not convene for the "Level II" administrative hearing until November 5, 2001, five and one-half years after the sexual harassment complaint was made. On November 15, 2001, the OPSB hearing office held a Level III administrative hearing to review the 1996 sexual harassment accusation. At this hearing, for the first time, Mr. LeBan was given the opportunity to confront Ms. Miller, the student who made the complaint in 1996. Although Ms. Miller claimed that some of the harassment took place in front of the entire class, and that Mr. LeBan had made inappropriate comments to the entire class, no other students were brought to testify. Thereafter, on November 21, 2001, then New Orleans Public School System Superintendent/CEO Col. Alphonse Davis recommended Mr. LeBan's dismissal from employment based upon the student's harassment complaint.
It is worth noting at this time that on August 21, 1996, Mr. LeBan was accused of improprieties relating to his attendance. Between August 21, 1996 and November 19, 1996, the New Orleans Public School System convened a series of conferences and hearings as required by OPSB policies, rules and regulations, for the purpose of reviewing Mr. LeBan's attendance matters only. During this time, the school board failed to bring forth any matters related to the sexual harassment accusation, nor did the school board give Mr. LeBan the opportunity to respond to or refute any evidence relating to the sexual harassment accusation. On April 28, 1997, the New Orleans Public School System Superintendent Morris Holmes lodged charges of willful neglect of duty and immorality against Mr. LeBan, relating to the attendance matters only. However, on March 16, 2000, after a two day hearing related to the attendance matter only, then New Orleans Public School System CEO Col. Alphonse Davis withdrew the non-sexual charges against Mr. LeBan as part of a negotiated settlement, and reinstated Mr. LeBan into active service as a teacher.
Thereafter, in December of 2003, two years after the administrative hearings relating to the sexual harassment accusation, and seven and one-half years after the student made her complaint, the OPSB convened a "tenure hearing" under La. R.S. 17:462, to consider the sexual harassment charges. Mr. LeBan's counsel subpoenaed documents as well as a tape recorded statement taken by the principal; however, the documents and tape recording had disappeared during the seven and one-half year lapse. At the conclusion of the two day hearing, the OPSB found Mr. LeBan guilty of the charges of willful neglect of duty and immorality, and ordered his immediate discharge from employment.
On July 17, 2006, after reviewing the transcript and exhibits from the tenure hearing convened by the OPSB, together with briefs submitted by both counsel, and oral argument, the trial court judge reversed the decision of the OPSB. Specifically, in his reasons for judgment, the trial judge stated, in pertinent part:
The central question is whether or not Mr. Levon LeBan, a certified tenured teacher with 15 years experience, accused of sexual harassment, was discharged by the School Board of New Orleans without a fair hearing.

*379 The original complaint was made on April 30, 1996 and no trial on the charges were set until October of 2001; five and one-half years after the complaint. This setting was for a Level II hearing and neither the complaining student nor any witness testified.
In November of 2001, a Level III hearing was held at which the complaining witness did testify. Mr. LeBan's attorney timely asked for production of documents and tape recordings from the School Board for his defense, none of which were produced. In answer to their non-production, the defense lawyer was advised that no documents nor tape recordings would ever be produced because they had been "lost".
This Court believes that Mr. LeBan's ability to defend himself against the sex charges was so seriously impaired by this lack of production, that the charges should be dismissed.
Even while these serious charges were pending, other more minor charges, (relative to attendance), were brought against Mr. LeBan. These latter charges were tried, defended and dismissed in August 1996 without ever mentioning or setting the sex charges for a hearing. It goes without saying that the sex charges were much more serious than the minor attendance charges.
This unanswerable and inexcusable passage of time, the lost [sic]of documents, and the lost tape recordings may even had been responsible in part for the complaining witness' memory lapse which her testimony at this later date reflects.
In addition to all of these deficiencies, the original sex charges were so improperly investigated by the School Board's Compliance Department, that when the charges were finally tried, most of the evidence which defendant needed to defend himself were lost or gone.
For these reasons, the defendant's ability to defend himself was so seriously impaired, that a trial on these charges was fundamentally unfair and they should be dismissed against Mr. LeBan. Also, the School Board is to reinstate all previous employee's lost benefits to Mr. LeBan.
The OPSB now appeals this final judgment. On appeal, the OPSB assigns the following assignments of error: (1) that the trial court committed reversible error in failing to follow the proper standard of review with regard to the decision of the school board; and (2) that the trial court committed reversible error in failing to find that the formalities of the tenure law were followed and that the decision of the school board was based upon substantial evidence.
DISCUSSION
A tenured teacher has a constitutionally protected interest in continued employment. Franceski v. Plaquemines Parish School Bd., 772 F.2d 197 (5th Cir.1985). The Louisiana Teachers' Tenure Act is designed to protect the job security of teachers, and the statute should be liberally construed in favor of its primary beneficiaries, tenured employees. Howell v. Winn Parish Sch. Bd., 332 So.2d 822, 827 (La.1976).
La. R.S. 17:443(A) provides in relevant part as follows:
A. A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency, dishonesty, or immorality, or of being a member of or contributing to any group, organization, movement, or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and then only *380 if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least twenty days in advance of the date of the hearing, the superintendent with approval of the school board shall furnish the teacher with a copy of the written charges. Such statement of charges shall include a complete and detailed list of the specific reasons for such charges and shall include but not be limited to the following: date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder, the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the teacher. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
Despite the provision for a full hearing, the standard for judicial review of a school board's action is limited to whether there is a rational basis for the board's determination supported by substantial evidence insofar as factually required. Howard v. West Baton Rouge Parish School Bd., XXXX-XXXX p. 7 (La.6/29/01), 793 So.2d 153, 157. Substantial evidence has been defined as "evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions." Wiley v. Richland Parish School Bd., 476 So.2d 439, 443 (La.App. 2 Cir. 9/25/1985).
The reasons for dismissal of a teacher are largely within the sound discretion of the school board, whose judgment will not be disturbed absent a clear showing of an abuse of discretion. Gaulden v. Lincoln Parish School Bd., 554 So.2d 152, 157 (La.App. 2 Cir. 12/6/1989). The school board's judgment thus should not be reversed in the absence of a clear showing of abuse of discretion. Id. However, if the action taken by the school board is arbitrary, capricious, or an abuse of discretion, it should be reversed. West v. Tangipahoa Parish School Bd., 615 So.2d 979, 981 (La.App. 1 Cir. 3/5/1993).
In this case, Mr. LeBan's counsel has consistently argued throughout these proceedings that his client was prejudiced by having to defend charges relating back more than five and one-half years, and by the school board's delay, of an additional two years, in hearing the case. Mr. LeBan cites to Jones v. Rapides Parish School Bd., 634 So.2d 1197 (La.App. 3 Cir. 5/19/1993) for guidance on how to handle a case such as this whereby the superintendent fails to formally institute charges against a tenured teacher until five years after the student made the complaint, and then waited another two years to hold the tenure hearing. In Jones, a tenured teacher was dismissed for willful neglect of duty. Specifically, during the dismissal proceedings before the school board, which occurred in 1989, the teacher was charged with incidents that occurred in 1984, 1985, and 1987-88, in addition to the 1989 incident that led to the dismissal action. The Third Circuit held that the school board could not rely upon the "old charges"  i.e. the 1984, 1985, and 1987-88 incidents, in dismissing the teacher. The Third Circuit stated that "[a]lthough no statute limits a school board's power to consider past conduct in a current charge of willful neglect *381 of duty, the lapse of time may bar prosecution when it would render a resulting conviction fundamentally unfair." Jones at 1199. The Third Circuit agreed with the trial court's finding that Jones was prejudiced and impaired in defending himself against some of the "older charges" and that the resulting conviction based on the older charges was fundamentally unfair. Id.
Similarly, in this case, the Superintendent and administration let this matter sit idle for five and one-half years before convening a hearing to give Mr. LeBan an opportunity to confront and cross-examine witnesses. After reviewing the record, we agree with the trial court that the OPSB's decision to delay this disciplinary matter for five and one-half years, then for another two years, deprived Mr. LeBan of a meaningful opportunity to respond to the charge, and impaired his ability to defend himself against the charge of sexual harassment. The school board administration failed to properly gather and then preserve the documents, and then bring the charges in a timely fashion. To wait over seven years before discharging a teacher for alleged misconduct is fundamentally unfair as such a delay makes it impossible to gather evidence, particularly in a situation such as this where the witnesses are students.
Accordingly, we find that the school board's decision to allow the hearing to go forward more than seven years after the alleged complaint was filed was arbitrary and an abuse of discretion. We find that a trial on the charge of sexual harassment under these circumstances was fundamentally unfair and thus, we hereby affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Although Mr. Falls interviewed Ms. Miller [the student], Mr. LeBan, and three members of the school faculty [Ms. Lee, Mr. Lang and Mr. Murray], he never interviewed any students or asked faculty members about the accusation.