DREW, J.
11 Charles P. Smith, a tenured teacher, appeals the district court’s affirmation of his dismissal by the Caddo Parish School Board (CPSB), following a tenure hearing conducted under La. R.S. 17:443.
The issue in this appeal is whether the CPSB violated Smith’s right in refusing to grant a continuance of his scheduled tenure hearing.[1]
The hearing was conducted without Smith’s presence on October 8, 2007. Smith’s counsel was present at all times during the proceedings.
After a full judicial hearing, the trial court affirmed the CPSB ruling.
This appeal followed. We now affirm.

Reasons for Judgment

After hearing testimony, receiving evidence and reviewing the record, the trial court found that under the circumstances created by Smith, there was no violation of his procedural and substantive due process rights. The trial court dismissed Smith’s suit, affirming his termination. We adopt in toto the trial court’s Reasons for Judgment, attached hereto as an appendix.
Of crucial importance, we note that Smith’s counsel:
• was present during the entirety of the CPSB hearing;
*544 • stipulated that CPSB had complied with La. R.S. 17:443;[2]
• cross-examined no witnesses;
• declined the opportunity to present witnesses on Smith’s behalf;
1declined to get the continuance by her client going on unpaid leave;[3]
• approved and consented to the release of all witnesses;
• had an opportunity to examine evidence and interpose objections;
• made no contemporaneous objections;
• did not request[4] to hold open the record for her client’s testimony; and
• did not request that the record be reopened for her client’s testimony.
The trial court concluded that the CPSB was entirely reasonable in:
• finding Smith not to be in good faith in seeking the continuance;
• concluding that good grounds for a continuance did not exist;
• denying Smith’s request for a continuance; and
• neither holding open nor reopening the record.
Ruling that all formalities were met and no insufficiency issues shown, the trial court affirmed the decision of the CPSB.

Arguments of Charles P. Smith

Smith asks this court to reverse the judgment below for these reasons:
• Dr. Robinson treated him for headaches and dizziness in 2001;
• he had other head and ear medical problems,[5] including his complaints just prior to the tenure hearing;
| s* the school board erred as a matter of law in conducting a tenure hearing without the tenured teacher being present;
• our constitution defends continued employment for tenured teachers;
• the La. Teachers’ Tenure Act protects the job security of teachers and should be liberally construed in favor of tenured teachers;
• tenured teachers are entitled to strict substantive and procedural protections before they can be removed from their jobs, including a school board hearing and judicial review of a school board’s action;
• La. R.S. 17:443(A) grants teachers the right to appear before the board[6] at such a hearing, along with witnesses and a lawyer; and
• judicial review is limited to a determination of the school board’s compliance with procedural requirements during the proceedings and whether the board’s *545 findings'are supported by substantial evidence.
Smith cites Richard v. Lafayette Parish School Board, 2008-73 (La.App. 3d Cir.5/21/08), 984 So.2d 218, where a terminated teacher was reinstated because the charging letter failed to include a list of witnesses, a mandatory requirement. Note our emphasis.
He further cites Leban v. Orleans Parish School Board, 07-0571 (La.App. 4th Cir.11/21/07), 972 So.2d 376, in which a tenured teacher was discharged for willful neglect of duty and immorality involving sexual harassment which occurred seven years prior to the hearing. The court found that the trial was fundamentally unfair because the delay, the loss of evidence, and the faulty investigation all combined to seriously impede the defendant’s ability to defend himself. Note our emphasis.
These cases are factually and legally inapplicable to this dispute.
Smith contends the school board violated his right to appear with witnesses, who should have been heard by the board. He maintains he ^presented an impartial witness at the judicial hearing along with medical evidence of his inability to appear at the tenure hearing. He also objects to the CPSB not leaving the record open for him to present a defense later.

Response by the Caddo Parish School Board

The CPSB responds that:
• neither the school board nor the district court erred, since the school board complied with all requirements of the tenure law;
• Smith abused the process by refusing to attend the tenure hearing;
• Smith had a court hearing, at which he could have had an opportunity to present evidence and witnesses of his choosing;
• Smith was attempting to manipulate the tenure process in order to continue receiving financial benefits while not working;[7]
• he chose to present no evidence of a legitimate medical problem;
• Dr. Robinson admitted writing the excuse at the patient’s request;
• at that time, the physician saw no evidence of nausea or dizziness;
• no medical reason precluded Smith’s attendance at the hearing;
• Smith’s counsel agreed that the CPSB complied with the tenure law;
• the CPSB did not abuse its discretion in refusing a continuance;
• the record provides substantial evidence upon which to justify the school board’s decision to dismiss Smith;
• Smith was less than candid with Dr. Robinson about his work status;[8]
• the trial court’s judgment is entitled to great deference;
• Smith’s counsel was present for the tenure hearing and made no request to hold the hearing open for any additional testimony;
|fi* Smith’s counsel did not utilize the opportunity to cross-examine witnesses;
• Smith’s counsel presented no evidence;
• no witness was excused without counsel’s consent; and
• Smith’s counsel had an opportunity to object to any evidentiary filings.

*546
Our Analysis

If there is a smoking gun here, it is that Smith’s scrambling for a continuance was predicated upon totally different reasons, in the few days before the scheduled hearing. First he contacted attorney Reggie Abrams on a Thursday, requesting a continuance because (1) he needed to go through the grievance process, and (2) his wife was sick. This didn’t work.
The next day, he told Dr. Robinson of his recent symptoms, though he had no ill effects when with the physician. Nonetheless, he asked for and got a medical excuse for one work day, which was the following Monday, the scheduled date of the hearing.[9] Strangely, he was not working at the time, having been suspended with pay, pending the tenure hearing. Thus, there was no reason for an excuse from work.
Our appreciation of the evidence is that Smith voluntarily refused to appear at the tenure hearing and deliberately declined to question witnesses or present any evidence. His strategy backfired. There is no showing of prejudice. All statutory requirements were meticulously followed. The findings of the CPSB and the trial court are eminently reasonable.
| ^Accordingly, we affirm in all respects, with costs assessed to Smith.
DECREE
At the cost of appellant, Charles P. Smith, the judgment is AFFIRMED.
|, APPENDIX
*547 chari.es p. smith
NUMBER: 520,574-B
VERSUS
FIRST JUDICIAL DISTRICT COURT
CADDO PARISH SCHOOL BOARD
CADDO PARISH, LOUISIANA
REASONS FOR JUDGMENT -
In accordance wilh La. R. S. 17:443B, a hearing and full judicial review of action taken by Caddo Parish School Board (CPSB) against tenured teacher, Charles Smith, was held May 11,2010. The Court heard testimony from Jackie Lansdale, Sharon Walden (formerly Sharon Smith), Charles Smith, Jan Holiday and, by agreement, received both the deposition testimony of Dr. James Robinson and Affidavit of Reginald Abrams. In addition, the formal charges and transcribed copy of the tenure hearing was received in evidence. After thorough review of the entire record, applicable law, written arguments of counsel and for reasons which follow, the Court concludes that under the specific and particular, circumstances created by Charles Smith, there was no violation of his procedural and substantive due process rights; his claims are dismissed and the October 8, 2007 action of CPSB is affirmed.
The Court summarizes and makes the following findings of relevant facts:
1) On May 30, 2007, OI lie Tyler, then Superintendent of the Caddo Parish School Board, issued charges against Mooretown Elementary tenured inclusion teacher Charles Smith, including allegations of (a) various acts of incompetency;
(b) willful neglect of duty, dishonesty and "non professional conduct seriously prejudicial to the school system” (including forgery of documentation logs); and
(c) willful neglect of duty, insubordination and “unprofessional conduct seriously
[[Image here]]
SCANNED 070820.10 00 0053
*548 explosiveness, threats, having to be escorted off campus-more than once, filing a false report and, perhaps the most shocking allegation, “inappropriate and significant use of the school board owned computer to access sexually obscene or pornographic web sites and to download and store obscene and pornographic images on the computer”) in violation of Caddo Parish School Board policies.
2) On June 5, 2007, CPSB approved a resolution calling for a tenure hearing for Mr. Smith concerning the allegations set forth by Ms. Tyler, and on June 6, 2007, Mr. Smith was provided notice of the resolution and charges, all in accordance with law.
3) Shannon Hicks, an attorney at law, represented Mr. Smith at all relevant times during the process.
4) A teacher tenure hearing was set for June 17, 2007; however, at the request of Ms. Hicks (who understandably needed time to prepare), the hearing was rescheduled for August 21,2007.
5) At the request of Fred Sutherland, counsel for CPSB, the hearing of August 21 was rescheduled for October 8,2007, a date agreed upon by both parties and both lawyers.
6) It was understood by both Charles Smith and CPSB and both Ms. Hicks and Mr. Sutherland that “there would be no further continuances and the matter would proceed as scheduled on October 8,2007.
7) On Thursday, October 4,2007, four days before the Monday, October 8 agreed-upon hearing date, Ms. Hicks contacted Mr. Abrams, general counsel for CPSB, requesting a continuance on the following grounds: (A) “Mr. Smith needs to go through the grievance process because he had a grievance that was pending; *549 and (B) because Mr. Smith’s wife had undergone some type of surgery or nasal surgery, or ENT and that Mr. Smith needed to be with his wife”. (See Transcript page 17 and Abrams Affidavit.) On the same date, Mr. Abrams relayed the continuance request to CPSB. On Friday October 5, Mr. Abrams was advised by CPSB that the request was denied, and he contacted Ms. Hicks and so advised her. The two lawyers agreed the hearing would go forward on October 8.
*548 _k
-2-
SCANNED G7032OJ.G 000054
*549 8) On Friday, October 5,2007, Mr. Smith presented to the office of Dr. James R. Robinson, a medical doctor board certified in Otolaryngology, with “complaints of recently occurring dizziness, headaches and weakness”. With regard to that October 5 doctor/patient event the Court finds the trial deposition testimony of Dr. Robinson particularly important:
Q. And what docs your note for October the 5U| say?
A. Under chief complaint 1 wrote: I’ve had dizziness, sinus headaches and stuffiness in the right car, weak spells, sleepiness, then 1 indicated, it wasn’t really bothering him bad at all now. The onset was two or three days previously, indicated that he may have had more of a problem the day before the visit but he was having no post nasal drainage. He did complain of an intermittent sore throat.
17:14-24
[[Image here]]
A. 1 remember that visit because it was difficult for me to put it, his complaints together with, with my physical findings. His complaint was somewhat unusual in that he said that 1 have had dizziness and sinus headaches and a sensation of stuffiness in the right ear, weak spells and sleepiness, but then he said it wasn’t really bothering him very much at all which is why I wrote that and included that phrase in my note. And I wondered at the time why he was there to see me about a problem that didn’t really seem to be bothering him at all.
38: 15-25 39: 1
_L
-3-
SCANNED 0788202G 000855
*550 On Friday, October 5, Dr. Robinson was not advised by Mr. Smith that he had an upcoming hearing scheduled for 4:30 p.m. on Monday, October 8 nor was Dr. Robinson advised that Mr. Smith was on paid leave due to school board charges filed against him in May and June of 2007. (See Robinson deposition testimony, generally pages 20-22.) At Mr. Smith’s request, Dr. Robinson provided him with a note dated October 5, 2007 stating, “may return to work October 9,2007'’. With respect to the necessity of a note, the Court finds the following question/answer trial deposition testimony important:
Q. Based on the note that you gave him, did you feei that there was really any medical need for this gentleman to be off until October the 9⅛?
A. I believe that 1 was accommodating his request for a note like the one 1 wrote.
21:16-21
[[Image here]]
Q. Doctor, it is your opinion that the physical condition and mental condition of Mr. Smith when you saw him on October the 5⅛, 2005 would not have warranted an excuse from work because of that condition through Tuesday, October the 9⅛.
A. I didn’t gather any information from my history or physical examination that would make me perceive he was unable to work but, of course, I’m riot sure what kind of environment he had to experience and in that situation 1 will always accommodate my patient when I can.
22:13-24
9) Apparently, at some point subsequent to the October 5 visit or at some point on Monday October 8, 2007, Mr, Smith apparently contacted Dr. Robinson’s office and an unsigned note was generated by that office stating as follows:
“Charles Smith has been under my care from 10/8/07 to 10/8/07...Pt *551 has been under Dr. Robinson’s care for dizziness and headaches. May return October 9, 2007"
*550 -4-
Jk
SCANNED O7082O1Q OO005S
*551 Exhibit 4 Robinson deposition
As to that note, Dr. Robinson expressed bewilderment as evidenced by the following testimony:
A. That’s correct. I don’t understand why this other note that we found that’s written on this form was necessary since he had a note that I gave him on October the 5"' saying that he couldn’t go back to work on the 9th. We have two notes dated different times that say essentially the same thing.
47' 16-25
[[Image here]]
1 just am confijsed and don’t understand why a note that’s dated or that’s categorized as Robinson No. 4 was necessary since he already had a note dated October the 5⅛ saying that he could go back to work October the 9a. I have two notes with different dates that say essentially the same thing. 1 have no idea why they are.
48:21-25 49:1-3
10) On Monday morning, October 8, 2007, Ms. Hicks contacted Mr. Abrams stating that Mr. Smith had a “severe headache and allergies and could not attend thc hcaring". Ms. Hicks indicated she would get a doctor’s excuse to Mr. Sutherland that day “around 2:00 p.m.”
11) On Monday, October 8,2007 at about 4:00 p.m., Mr. Abrams received the notes from Dr. Robinson. Based on the particular circumstances (the request of Thursday October 4 on non-medical grounds for a continuance plus the two somewhat unusual eleventh hour notes of Dr. Robinson) Mr. Abrams concluded that Mr. Smith was abusing the process and recommended to CPSB (1) that the hearing proceed as scheduled; or (2) that Mr. Smith be on leave without pay *552 pending a new hearing date. Ms. Hicks advised Mr. Abrams that Mr. Smith wouid not agree to either choice.
*551 _k
-5-
SCANNED O78820ÍO O000S7
*552 12) Apparently accepting Mr. Abrams’ recommendation, CPSB denied Mr. Smith’s request for continuance and the hearing commenced at 4:42 p.m. with Ms. Hicks present and participating until the hearing was concluded at 10:07 p.m. by the rendering of verdicts on the 34 charges.
13) Of particular importance concerning the hearing are the following:
(A) Mr. Smith, through Ms, Hicks, could have opted to go on unpaid leave and obtain a continuance;
(B) Although Ms. Hicks requested a continuance, which was denied, she was present and represented Mr. Smith throughout the night;
(C) Ms. Hicks'stipulated that CPSB had completely complied with all requirements of R.S. 17:443 for bringing the hearing, specifically notice of the charges, evidence to be presented, and all other statutory mandates.
(D) Although Ms. Hicks, for whatever reason, chose not to cross examine witnesses, she had the full and complete opportunity to do so and, further, she had the opportunity to present witnesses on Mr. Smith’s behalf and declined to do so. (See Transcript pages 58, 105, 119, 129, 141, 156, 177, 194 and 213 as to her'choice not to cross examine any witness and page 215 as to her choice not to present any witness.)
(E) No witness was released without the approval and consent of Ms. Hicks nor was any evidence introduced, including the incriminating and graphic computer images, without Ms. Hicks having the opportunity to examine the evidence and pose objections to it. (See, for example, Transcript 120:5-16.)
-6-
Ji
SCANNED 07082010 O0O0S
*553 (14) Significantly, Ms. Hicks did not contemporaneously-nor in any post verdict(s) motion-request that the record be held open-or reopened-for the testimony of Mr. Smith; Ms. Hicks thereby waived any right she may have had to complain (or for Mr. Landry to later complain) that R.S. 17:443A was violated, particularly the “right to appear” and “shall be heard” provisions. (See Transcript page 215 as to the lack of any request that the record be held open.)
At the conclusion of the trial the Court requested that counsel brief three issues: (1) Whether CPSB abused its discretion in denying the continuance? (2) Whether CPSB abused its discretion in not leaving the record open to allow Mr. Smith to testify at a later time? (3) Whether the Court has any option other than to affirm or reverse the decision of CPSB? In other words, in strictly adhering to R.S. 17:443A, can the Court order a remand to CPSB for the sole purpose of Mr. Smith providing testimony (or affirmatively waiving his right to testify)?
As to the third issue of this Court’s options, Brian Landry, in his May 13, 2013 post trial letter brief, has written:
As to the court’s second question concerning options that it may have in disposing of this case, we do not mean to challenge the court’s jurisdiction or powers in any manner, but statutory interpretation leads us to conclude that under La.R.S. 17:443(I3), the court only has two options. The language of the statute is clear and not ambiguous in any way. Just as in the earlier part of the statute, the Legislature chose to use the mandatory, rather than permissive form, when it stated, "the court shall have jurisdiction to affirm or reverse the action of the school board...” No other option exists.
This Court agrees with Mr. Landry that it has only two options-to affirm or
reverse CPSB. There is no legal basis or authority for this Court to remand for
taking of any testimony-even the teacher’s statement.
As to the issue of whether CPSB abused its discretion in denying Mr. *554 Smith’s request for continuance, the Court concludes that it was entirely reasonable for Mr. Abrams to reach the inferences which he did and to make recommendations to his client, CPSB, accordingly. It was also within the discretion and certainly within reason for CPSB to conclude that the continuance request was not made in good faith, that actual good grounds did not exist for granting the request or that the two notes from Dr. Robinson were pretcxtual in nature. The apparent findings in that regard made by CPSB on Monday, October 8, 2005, at about 4:00 p.m. were consistent with the subsequent deposition testimony of Dr. Robinson, taken March 18, 2009, moie fully described on pages 3-5 of this opinion. Therefore, this Court concludes that CPSB was well within its discretion to deny the continuance request based on the history and particular circumstances of this case.
*553 -7-
_k
SCANNED 07082010 300059
*554 The other issue, actually raised by the Court aL the conclusion of the evidence regarding the notion of holding the record open for the testimony of Mr, Smith, becomes an issue only if the Court has concluded — as it has-that CPSB 'properly denied Smith’s continuance request. This Court finds that there is’no obligation for CPSB to have held the record open particularly in light of the fact that (1) Ms. Hicks was present throughout the hearing, had the opportunity to cross examine witnesses and object to evidence; and (2) Ms. Hicks did not request that the record be held open for any additional testimony.
Having concluded that CPSB complied with all statutory formalities based on the facts and circumstances of this case and there being no issues presented with regard to the sufficiency of evidence, the Court concludes that the decision of CPSB should be affirmed in all respects.
SCANNED 07O82Q1O 000060
*555 The bottom line is that the evidence presented at October 8, 2007 tenure hearing was overwhelming, and in light of the extreme severity of the charges, Mr. Smith-unless incapacitated and hospitalized or dead-should have been present.' In the Court’s opinion, he specifically chose not to be present; the CPSB was correct to proceed with the hearing; his lawyer chose not to cross examine witnesses or to present any witnesses; and in light of the evidence, CPSB was correct in its verdicts. The action of CPSB is affirmed and Mr. Smith’s claim is dismissed at his costs.
Counsel shall submit a formal judgment in accordance with La. Disl. Cl. R. 9.5.
Signed this 7th day of July, 2010, in Shreveport, Caddo Parish, Louisiana.
[[Image here]]
SCOTT J. CRJCHTON DISTRICT JUDGE
DISTRIBUTION:
Brian D. Landry, Counsel for Charles Smith Fred H. Sutherland, Counsel for CPSB
-9-
17rs
SCANNED 07082310 000061

. In short, the board’s refusal to grant a continuance was apparently based upon its conclusion that Smith's alleged adverse medical condition was a ruse, proffered merely to drag out the proceedings, enabling him to continue collecting his pay.

. This strategy was certainly a gamble. It effectively waived any subsequent objections or complaints relative to any alleged violations of LA. R.S. 17:443(A). Counsel knew her client had received notice of the charges and evidence to be presented.

. Had Smith prevailed at a later CPSB hearing, he would have gotten his back pay.

. Neither during nor after the hearings.

. His ex-wife testified at the judicial hearing that Smith’s 2003 surgery did not solve his health problems and that he periodically had dizziness and nausea, especially if he had sinus problems or a head cold. She alleged that the week before the tenure hearing, Smith had a head cold, for which she drove him to the doctor, since he was unable to drive. She further testified that on the evening before the tenure hearing, Smith's physical condition worsened, so she delivered the doctor’s excuse note to his counsel. When the CPSB requested more information, she secured the second note from Dr. Robinson’s office. It was not signed by the physician.

.We note with much interest that Smith did testify at the judicial hearing.

. Smith had been on paid leave for an extended time period during the pending tenure proceedings.

. Smith requested a slip saying he could return to work on October 9, 2007, even though he was actually on paid leave, pending the decision of the CPSB.

. The tenure hearing was scheduled for, and conducted upon Monday, October 8, 2007. The doctor's excuse was signed on Friday, October 5, 2007. Its issuance was predicated on Smith's subjective complaints. It released him to go back to work on Tuesday, October 9, 2007.