476 So.2d 439 (1985)
Choicie M. WILEY, Plaintiff-Appellant,
v.
RICHLAND PARISH SCHOOL BOARD, Defendant-Appellee.
No. 17166-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1985.
Rehearing Denied October 24, 1985.
*440 Sir Clyde Lain, Monroe, for plaintiff-appellant.
Cooper, Hales & Aycock by Thomas E. Cooper, Jr., Rayville, for defendant-appellee.
Before HALL, MARVIN and LINDSAY, JJ.
MARVIN, Judge.
Ms. Wiley, a 20-year tenured teacher, appeals a judgment upholding her 1984 dismissal by the Richland Parish School Board. She was found to have willfully neglected her duty in five of ten alleged specifics of misconduct between 1980 and 1983 while serving two parish school superintendents. The issue is sufficiency of the evidence and timeliness of the formal institution of charges against her. LRS 17:443. We affirm.
A teacher's conduct in the preceeding school year may form a valid basis for formal charges of willful neglect. Charges are not rendered "untimely" merely because the retiring superintendent, when presented with facts surrounding the charges, does not formally institute charges. LRS 17:81; See Andrews v. Claiborne Parish School Board, 189 So. 355 *441 (La.App.2d Cir.1939). Even if we only consider this appellant's conduct during the school year in which the charges were brought, we find the school board's decision to dismiss to be supported by substantial evidence.

FACTS
A language arts teacher at Delhi Junior High School since 1980, appellant became the subject of repeated complaints from fellow teachers and parents of her students between 1980 and 1983. In April 1983 Leonard Guine, principal of Delhi JHS since 1978, complained about appellant in a letter to then superintendent of schools, Charles M. Tillman. The letter accused appellant of "failing to follow directives," and refusing to cooperate with teachers and parents seeking help and expressing concern about the grades of appellant's students. Guine requested in the letter that the board "terminate or transfer" appellant. The subject matter of the letter forms the basis of charges 1 through 8 against appellant. Tillman retired as superintendent shortly after the letter was presented to him, without taking formal action against appellant.
In May 1983, Reuben Hayden succeeded Tillman as superintendent and the letter came to his attention. Just before the 1983-84 school year began, Hayden sent appellant a certified letter requesting a conference with her on August 30 to review her performance and to discuss Guine's complaints. Hayden testified that the meeting was not productive. He said appellant was hostile and that she said she believed Guine was "out to get her." Nonetheless, appellant was reappointed to teach at Delhi JHS for the 1983-84 year.
On Friday, October 7, 1983, a parent came to the school unannounced, seeking a conference with appellant about her child's grades. Guine testified that appellant met briefly with the parent outside her classroom, but refused to confer with the parent during a class period. That afternoon Guine directed appellant to deliver to him by 10:00 a.m. the following Monday, October 10, "all papers and criteria used in determining the grades" of that student. Guine testified that appellant did not comply with his written directive. Appellant testified that she attempted to deliver the papers after the deadline but Guine refused to accept them. This incident is the basis of charge 9.
Hayden testified he learned on October 10, 1983, that a group of parents planned to appear at the school on October 11 to confront appellant about their childrens' grades. About 7:30 a.m. on October 11, Hayden and Guine called appellant to Guine's office to discuss the parents' grievances. Hayden's testimony and the contemporaneous report he filed about the October 11 meeting indicate appellant was again uncooperative and unreceptive to suggestions made to her for improvement and that appellant again insisted that Guine was "out to get her." Hayden immediately suspended appellant with pay. Appellant left the school minutes before some 20 parents arrived to voice to Guine and Hayden their grievances about not being allowed to examine test papers of their children.
Hayden immediately prepared and mailed by certified mail a letter to appellant formally informing her of the suspension. The letter also clearly stated that appellant had not complied with Guine's October 7 request for the student's papers and ordered her to deliver to the school board office "test material and other criteria used to determine six weeks grades for all children... by 12 noon October 13, 1983 ... failure to comply with this request will be viewed as gross insubordination."
In response to Hayden's letter, appellant delivered only three test papers of one student mentioned in Guine's October 7 directive and two grade books. She did not deliver "test material and other criteria ... for all children." Hayden testified that he did not consider the delivered materials sufficient to comply with his request for data on all children in appellant's class. This incident is the basis of formal charge 10 against appellant.
*442 In February 1984, the board formally prepared the 10 written charges against appellant. Each charge generally related to appellant's failure to comply with the directives of her supervisors as required by the manual issued to Delhi teachers and to appellant's failure to complete forms and reports required by the school or by the board for evaluation of her students' academic needs and her teacher performance. The first eight charges involved appellant's conduct mentioned in Guine's initial complaint to Charles Tillman in April 1983. Charges 9 and 10 involved appellant's conduct occurring in the current school year, specifically appellant's refusal to comply with Guine's and Hayden's October 1983 requests for test papers and grading criteria.[1]
The certified letter notified appellant of the charges, the hearing date, her right to counsel and to subpoena witnesses, and her right to choose a public or private hearing. Attached to the letter was a list of the charges, including detailed information and documentation in support of each charge.
An evidentiary hearing was held by the school board. Appellant was represented by counsel and confronted and cross-examined witnesses. The board quashed two of the first eight charges and found appellant guilty on five of the eight remaining charges, including charges 9 and 10. The board president formally informed appellant by a certified letter of her dismissal.
Appellant was allowed a full evidentiary hearing in district court. The transcripts of the board hearing and the hearing in the district court are contained in the record of this appeal.

ASSIGNMENTS OF ERROR
Appellant argues that the board is "estopped" from considering any neglect of duty charges that arose before the 1983-84 school year and under the previous superintendent. She alternatively argues that the board's action was arbitrary, capricious, and not supported by substantial evidence.

A. SUBSTANTIAL EVIDENCE TO SUPPORT BOARD FINDINGS
While LRS 17:443 affords an aggrieved teacher judicial review of his or her termination, the district court must give deference to the board's findings of fact and credibility. The teacher may petition for a full evidentiary hearing or submit his or her case for review on the board record. Although in some instances the teacher may introduce new evidence at a review hearing and the board may offer evidence to rebut it, that hearing should not amount to a trial de novo. The parties should not be allowed a retrial of the case on review. See In Re Dowden, 446 So.2d 853 (La. App.2d Cir.1984); and Lewing v. DeSoto Parish School Board, 113 So.2d 462 (La. 1959).
The reviewing court's inquiry is limited to whether the termination proceedings complied with statutory formalities and to whether the board's findings are supported by substantial evidence. Howell v. Winn Parish School Board, 332 So.2d 822 (La.1976); Sampson v. Lincoln Parish School Bd., 439 So.2d 454 (La.App.2d Cir. 1983); Cunningham v. Franklin Parish School Bd., 457 So.2d 184 (La.App.2d Cir. 1984).
The record shows compliance with the formalities and procedural due process requirements of LRS 17:443. Appellant makes no complaint in this respect.
*443 We determine whether the district court erred in finding the board action supported by substantial evidence and hence, not arbitrary and capricious.
Substantial evidence has been defined as "evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions." Cupit v. Grant, 425 So.2d 847 at 849 (La.App.3d Cir.1982).
The testimony of board witnesses is corroborated either or both by other witnesses and writings made contemporaneously with each incident of alleged misconduct.
The board's evidence is contradicted only by appellant's testimony.
Charge 1 accused appellant of "refusing the request and subsequent directive" by Guine that appellant furnish the "Title I" remedial reading teacher with completed forms to indicate the reading skills appellant was teaching each week and to identify students needing reading skill reinforcement. The only evidence to contradict testimony of the Title I teacher that appellant failed to complete the forms, even after the written request by Guine, was appellant's testimony that she "passed" the information "orally" or "informally" to the teacher.
Charge 5 accused appellant of refusing to properly prepare and submit teaching "goals and objectives" required by the board under a mandate of the State Department of Education and LRS 17:391.1-391.9. In addition to Guine's testimony in support of the charge, a Richland Parish education supervisor, who had conducted an "inservice" program to help teachers prepare these materials, testified that even upon a second attempt, appellant's goals and objectives were "too general" to be useful in evaluating appellant's performance. Although one board witness spoke of a "parishwide implementation problem" with the program, another said all teachers in the parish except appellant eventually implemented or completed the program to set acceptable goals and objectives.
Appellant was accused in Charge 7 of refusing to complete "composite measure format" forms designed to determine student eligibility for a federally-funded remedial reading program.
According to Guine, these forms, which were only partially completed by the teacher, were due in May at the end of a school year and on all students. At the district court review hearing, appellant produced forms on some of her students, but these forms were dated August 11, 1982. Appellant weakly explained that Guine told teachers at a faculty meeting to submit the forms "whenever you finish them."
To charge 9, appellant explained that a lengthy, unscheduled conference with a parent on the morning of October 10, 1983, prevented her from timely submitting the student's papers Guine had requested the previous Friday, October 7, 1983. Appellant said the conference lasted an hour. The parent testified it lasted 15-30 minutes.
Hayden's testimony that appellant did not comply with his October 11, 1983, letter because she submitted only the papers of one student and two grade books is supported by testimony that teachers are required to maintain individual files and records on each student. Appellant testified she interpreted the letter to mean she need only submit the papers of the student mentioned in Guine's October 7 directive.
The school board's written reasons for its findings reveal that it carefully and conscientiously weighed and considered the conflicting evidence. Appellant's testimony was heard, considered, and rejected as not credible. The trial court did not issue written or oral reasons for judgment.

B. WHETHER CHARGES 1-8 WERE PROPERLY BEFORE THE BOARD.
Appellant's argument that the board should have granted a motion to quash or that the board or superintendent is "estopped" from bringing charges 1 through 8 is based on Charles Tillman's inaction or decision not to act on Guine's April 1983 *444 complaints and on the simple passage of time from the alleged infractions until formal charges were brought.
Tillman's inaction has no bearing on future action of the board. The superintendent alone has no power to dismiss a tenured teacher. He may only recommend that the board commence proceedings under LRS 17:443. The identity or decision of any given superintendent does not affect the board's power to discipline or terminate teachers, incident to its status as a continuing entity with sole and exclusive power to administer public schools within a parish. LRS 17:81; See Andrews v. Claiborne Parish School Board, supra.
Appellant also argues that because a terminated tenured teacher must petition for judicial review within one year of board action, a time limit should be imposed on the board for prosecution of charges 1 through 8. She also argues that the board somehow "waived" its power to charge her with misconduct before the 1983-84 school year because it reappointed her to teach during the 1983-84 term.
Estoppel is not favored by Louisiana courts. The factual elements of the doctrine must specifically be pleaded and proved by the party seeking to invoke it. Appellant has not shown that she changed her conduct or acted to her detriment in reliance on any act of the board or the superintendent. Metropolis, Inc. v. Hanson, 434 So.2d 1207 (La.App. 1st Cir.1983); Crabtree v. Bethlehem Steel Corporation, 284 So.2d 545 (La.1973).
Administrative bodies are not "estopped" by the mere passage of time from performing prosecutorial or investigative functions. We recognize, of course, that lapse of time may bar prosecution when it tolls a statute of limitations or when it would render a resulting conviction fundamentally unfair.
No statute limits a school board's power to consider past conduct in a current charge of willful neglect of duty. It was not shown that appellant was prejudiced or impaired in preparing her defense on some of the "older" charges. Appellant was certain and not vague, in her recollection of those events. There is no showing that passage of time deteriorated the board's case or weakened the reliability of its evidence. All charges were thoroughly documented by contemporaneous letters and memos to and from appellant, her supervisors, and others. All charges were corroborated by testimony found credible by both the board and the district court.
Appellant's refusal or failure to comply with her supervisors' directives during the 1983-84 school year, specifically asserted in charges 9 and 10, are supported by substantial evidence, and alone support appellant's termination for willful neglect of duty. Because no evidentiary exclusion rule or issue preclusion device prevented the board's consideration of appellant's earlier conduct, that conduct became part of appellant's continuous refusal or inability to comply with directives of her supervisors to complete forms and produce reports required by the board in exercise of its power to formulate reasonable rules for the administration of public schools. Under these circumstances, appellant's conduct before the 1983-84 school year was properly considered by the board in charges 1-8.
At appellant's cost, judgment is AFFIRMED.
NOTES
[1] The charges on which appellant was found guilty read as follows:

1. Refusing the request of ... Principal ... to furnish reading skills to Chapter I reading teacher.
5. Refusal to properly write Goals and Objectives as required by State law.
7. Refusal to accomplish Composite Measure Format as directed by principal.
9. Refusal to deliver to ... Principal ... test papers as requested.
10. Refusal to deliver to [Hayden] Superintendent, Richland Parish Schools, all test papers and all other criteria as used to determine 6 weeks grades for all students taught by Miss Wiley in 1983-84 school year.