STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 24-353


BARRET HARGRAVE

VERSUS

VERMILION PARISH SCHOOL BOARD, ET AL



**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 112531-J2
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

WILBUR L. STILES
JUDGE

**********

Court composed of Elizabeth A. Pickett, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.


AFFIRMED.

**Tracy P. Curtis**
**The Glenn Armentor Law Corp.**
**300 Stewart St.**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Barret Hargrave**

**Evan Alvarez**
**Casey Hollins**
**Hammond, Sills, Adkins, Guice, Noah, and Perkins LLP**
**2431 S. Acadian Thruway, Suite 600**
**Baton Rouge, LA 70808**
**(225) 923-3462**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Vermilion Parish School Board**

**STILES, Judge.**

The Vermilion Parish School Board terminated Barret Hargrave's employment as a non-tenured teacher at Kaplan High School. After a judicial review hearing, the district court upheld the termination of Mr. Hargrave. Mr. Hargrave has appealed the district court's judgment. For the following reasons, we affirm the district court's decision upholding Mr. Hargrave's termination as a non-tenured teacher.

## FACTS AND PROCEDURAL HISTORY

Barret Hargrave was employed as a teacher at Kaplan High School in Vermilion Parish where he taught agriculture and welding classes. On November 20, 2022, an explicit video was posted to a Snapchat account named "BHargrave." The video showed a sexual act between a male and a female, as described by the Vermilion Parish School Board (VPSB) in their appellee brief:

> The video, which appeared to have been home-made and videoed using a cellphone, was filmed by a male who was in a sitting position. While the male was sitting, a female, who was clearly visible in the video and known in the community to be the spouse of Mr. Hargrave, was performing oral sex on the male, while the male filmed the interaction. The male's penis was fully visible in the video, as was the identity of [the] female, who was Mr. Hargrave's wife.

The record supports this accounting. It is undisputed that members of the community viewed the video, including parents of Kaplan High School students and some of the students themselves. The Principal of Kaplan High School, Shay Herpin, was informed of the video's existence and reported the matter to VPSB. A recording of the video was also sent to both Principal Herpin and VPSB. Mr. Hargrave was placed on administrative leave with pay pending an investigation into the matter.

Mr. Hargrave was asked to submit a written statement concerning the incident with the video. On November 28, 2022, he sent an email to Principal Herpin arguing

that he knew nothing about the video and that his family "has been made a victim of someone trying to ruin our name." According to Mr. Hargrave, a friend of his called him November 20, 2022, and told him to check Snapchat because something inappropriate had been posted. Mr. Hargrave claimed that he checked his Snapchat but could not find any video. It was his opinion that "either its [sic] a bad rumor created by someone trying to harm us" or "someone created a video using some cloning technology," and he suggested that his "personal data" had been hacked. Mr. Hargrave maintained that "[w]hat we do in the privacy of our own bedroom is our own business," and that "our identity has been stolen and we are the victims of a malicious crime with no evidence!" He further stated, "We DID NOT and WOULD NOT post anything to social media ever in this manner because this is not WHO WE ARE."

On December 5, 2022, Principal Herpin submitted an Incident Report, signed by himself and Mr. Hargrave, to the Superintendent of VPSB, Thomas Byler. The Incident Report stated, "Mr. Hargrave posted a sexually explicit video on his snapchat account, and it is circulating through the school and community." Mr. Hargrave commented on the Incident Report, "No video evidence was provided. Will attach statement."

In response to the Incident Report, Mr. Hargrave sent an email to Principal Herpin on December 5, 2022, arguing that he did not agree with the incident report. Mr. Hargrave stated that he was not provided with any evidence of a video and that he had spoken with law enforcement about the incident. He further argued that he was not aware of any school policy or law being violated. As such, he felt that the Incident Report should be null and void.

On December 9, 2022, Superintendent Byler sent Mr. Hargrave, via email, a Notice of Due Process Hearing. Mr. Hargrave was informed that Superintendent Byler was "considering taking disciplinary action against [him], which disciplinary action may include the suspension or termination of [his] employment," as a result of the report that "a sexually explicit/pornographic video was posted to [his] Snapchat account, which post was viewed by co-workers and others." A due process hearing was scheduled for December 19, 2022. Superintendent Byler further informed Mr. Hargrave that "during this due process hearing, I may take into consideration your prior work history with the School Board, including three prior incident reports dated April 25, 2016, February 22, 2017, and February 12, 2021."

At the December 19, 2022 due process hearing [1], Mr. Hargrave was represented by an attorney, April Defelice, and a union representative. Also present at the hearing were Superintendent Byler, Assistant Superintendent Paul Hebert, Assistant Superintendent Marc Turner, and Principal Herpin. Mr. Hargrave and Ms. Defelice were shown a copy of the video prior to the hearing. It was explained to Mr. Hargrave that the school had been informed that a video was circulating which had been posted by one of its teachers to his Snapchat account, a copy of which was sent to Principal Herpin. The Snapchat account, entitled "BHargrave," had since been deleted. However, someone recorded the video on their phone, and it had been shared with students.

Mr. Hargrave and Ms. Defelice claimed that Mr. Hargrave's cell phone had been "breached," which he reported to the Sheriff's Office and the FBI. Mr. Hargrave claimed that he did not have a copy of the video and he did not see the

---

[1] An audio recording of the due process hearing was introduced into evidence and has been reviewed by this panel.

video on his Snapchat account. He maintained that he only had one Snapchat account, named "BodieLSU," and that the Snapchat account named "BHargrave," on which the video had been posted, was not his account. After contacting Snapchat, Mr. Hargrave downloaded information regarding his "BodieLSU" account, and the data showed that no such video was posted to that Snapchat account. Nor was the Sheriff's Office able to locate the video on his cell phone.

Mr. Hargrave was repeatedly questioned at the due process hearing about the existence of the video and whether he had made it. Superintendent Byler made it clear that the reality was there is a video which got out to the public and it could be detrimental to Mr. Hargrave's job. He explained that, ultimately, it comes back to the public, whom Mr. Hargrave serves; the public believed that "BHargrave" is Mr. Hargrave's Snapchat account; they recognized his wife in the video; and they assumed that Mr. Hargrave was also in the video.

Eventually, Mr. Hargrave acknowledged that he made the video November 20, 2022, but maintained that he had not shared it with anyone and that it was his "personal life." It was agreed that there was nothing illegal or wrong about the video itself, but it was wrong that Mr. Hargrave's students had seen the video and that it would affect them in the classroom. The school and VPSB had been contacted by parents concerned with Mr. Hargrave continuing to teach their children and potentially escorting their children to school activities. Additionally, Principal Herpin and Superintendent Byler stated that they were concerned with Mr. Hargrave's initial statements that he did not know anything about the video and had no recollection of it being made, when in fact Mr. Hargrave did make the video and was obviously aware of its existence.

On January 9, 2023, Superintendent Byler sent a letter by certified mail advising Mr. Hargrave that he was contemplating disciplinary action against him, "up to and possibly including the termination of your employment as a non-tenured teacher with the Vermilion Parish School Board." Mr. Hargrave was instructed that pursuant to La.R.S. 17:443(A), he had seven calendar days from receipt of the letter to respond in writing to the allegations that "a sexually explicit/pornographic video was posted to a Snapchat account affiliated with you," which was "viewed by co-workers, and others in the community, and reported to the School Board." After Superintendent Byler received and reviewed a response from Mr. Hargrave, he would inform Mr. Hargrave of his final decision in writing.

On January 18, 2023, Ms. Defelice sent a letter via email to Evan Alverez, VPSB's attorney, on Mr. Hargrave's behalf. The letter stated, "It is Mr. Hargrave's position that he has not violated any School Board policy …, nor has he in any way engaged in unprofessional conduct that is not conducive to the education of children." Ms. Defelice also referenced information received from Snapchat which she argued proved Mr. Hargrave had not posted any such video to his sole Snapchat account, "BodieLSU." Additionally, Ms. Defelice reiterated that Mr. Hargrave had reported to the Vermilion Parish Sheriff's Office and FBI that he had evidence his phone had been hacked and that there was an ongoing investigation. She asked that the disciplinary action against Mr. Hargrave be dismissed and that he be reinstated to his teaching position with VPSB.

On May 12, 2023, Marc Turner, the Assistant Superintendent of Personnel and Operations, sent Mr. Hargrave an email entitled "Notice of Termination." The email explained that Superintendent Byler "has made the decision to terminate your employment with the VPSS effective 30 June 2023. You will remain on Leave with

5

Pay until that time." A letter from Superintendent Byler was attached to the email, and explained in detail how he reached his decision:

> After considering your various written responses, the current situation, and your prior employment history with the Vermilion Parish School Board ("School Board"), I have decided to terminate your employment as a non-tenured teacher with the School Board. My decision is based, in part, on the following reasons.

> First, as a teacher, you are charged with the daily supervision and care of any parents' most trusted possession, which is their child. As a result, it is imperative that parents feel confident and comfortable with the teacher assigned to their child. Because a teacher's conduct, whether at work or at home, and whether legal or not, can affect the confidence and comfort a parent has in a teacher, it is imperative that teachers always be cognizant of the position they hold, as well as be cognizant as to how even their personal decisions could affect that confidence or comfort. For that reason, the School Board has maintained Policy GBRA, which provides in pertinent part that:

> "The Vermilion Parish School Board believes the teaching profession occupies a position of public trust involving not only the individual teacher's personal conduct, but also the interaction of the school and the community. Education is most effective when these many relationships operate in a friendly, cooperative, and constructive manner. A teacher's conduct, as well as the conduct of all employees throughout the school district, should meet acceptable standards of the community and show respect for the law and the rights of others."

> The policy further provides that:

> "employees are cautioned that the appropriateness of certain action or behavior must necessarily be dictated by the nature of the position held by the employee and standards of common sense. By virtue of one's education and experience, an employee knows and understands that certain actions or conducts are unacceptable even in the absence of formal School Board policy."

> As to the current situation, a sexually explicit/pornographic video was posted to a SnapChat account that members in the community, and employees at your school, have long affiliated with you. Due to the sensitivity of the matter, I will not go into details as to the video itself. But, in addition to the video being posted to a SnapChat account affiliated in the community to you, images in the video itself would further lead a viewer to conclude that the video was posted by you.

> In your responses and during our conversations, you maintained that you did not post the video and that your phone was hacked. In

support of your argument that you must have been hacked, you submitted documentation evidencing that you may have been hacked on several prior occasions. For example, you submitted documentation from 2020 showing that your phone had been compromised. You also submitted documentation showing that, in October of 2022, you were notified that your personal information had been discovered on the dark web. Thus, your own submissions show that, prior to this incident, you were well aware of the fact that there are criminal elements who desire to obtain and exploit people's personal and/or private information. Despite your own past experiences in having your personal information possibly obtained by unauthorized individuals, you nevertheless made the highly risky and questionable decision to take and store an extremely sensitive and graphic video on your mobile device. Thus, even if you did not post the video itself, the decision to make and store the video on your mobile device has called your decision-making into question. Furthermore, since the video was viewed by numerous individuals in the community, my office has received calls from various parents who do not want their child to be enrolled in your class. In fact, projected enrollment for the AG class that you teach has substantially dropped as a result of parents not wanting their child to be in your class. Thus, the video has impacted your ability to effectively serve as a teacher.

In addition to the current matter, as mentioned in my Notice of Due Process Hearing letter sent to you in December of 2022, I have also considered your past employment relationship with the School Board. As specified in that letter, you have been previously written-up or counseled for work-related deficiencies on three prior occasions, those being April 25, 2016, February 22, 2017, and February 12, 2021. Thus, the current situation is not the first time that your behavior or decision-making has been called into question. Although you claim that I should disregard your three incidents due to the provisions of the School Employees Personnel Act, your own letter acknowledges that you did receive notice of these incident reports. Specifically, your March 31, 2023 letter acknowledges that[.]

. . . .

Thus, it is clear that you were informed about your prior three incidents prior to that information being placed in your personnel file. Your assertion that you were supposedly told that the reports would not go into your personnel file does not prevent me from taking the reports into consideration.

Given the totality of the situation, I have determined that your employment with the Vermilion Parish School Board will be terminated effective June 30, 2023. Pursuant to La. R.S. 17:443(A), you have sixty (60) days from your receipt of this letter to appeal my decision to the 15th Judicial District Court for the Parish of Vermilion.

In response to his termination, Mr. Hargrave filed a Petition for Review of Disciplinary Action Against Teacher Under La.R.S. 17:443 and Damages on July 6, 2023. The Petition requested a review by the Fifteenth Judicial District Court of his termination by VPSB which he claimed was arbitrary and capricious. On January 23, 2024, VPSB filed a Motion to Lodge Record, seeking to lodge with the court "all of the documentation that was put before the Superintendent, by both Plaintiff himself and school staff, during the disciplinary proceedings." Included with the documentation introduced at the due process hearing was a copy of the video at issue, as well as an audio recording of the due process hearing. No objection was received by Plaintiff or his counsel to the motion to lodge record, and the motion was granted by the district court on January 25, 2023.

A hearing was held before the district court on February 20, 2024. After hearing argument from both parties, the court found that Mr. Hargrave was an at-will employee, the proper proceedings were followed by VPSB, the superintendent had the authority to make the decisions at his discretion, and there was enough information to support the superintendent's decision to terminate. A judgment dismissing the matter, with prejudice, was signed on March 19, 2024, ordering "that, pursuant to La.R.S. 17:443(A), the School Board's decision to terminate the employment of Plaintiff, Barret Hargrave, was not arbitrary or capricious, and shall stand." Mr. Hargrave has appealed the district court's judgment.

**ASSIGNMENTS OF ERROR**

Mr. Hargrave asserts the following assignments of error on appeal:

A. The district court erred in failing to determine appellant's tenure status, and thus erred in concluding that appellant was employed at-will. Instead, the district court should have found that appellant was tenured and entitled to the protections of La. R.S. 17:443(B), and

8

thus that the administrative proceeding was flawed and reinstate appellant's employment.

B. If appellant was nontenured, the district court erred because it did not determine if the action taken by the superintendent was arbitrary or capricious. None of the reliable information in the administrative record supported the charge of publishing pornography, thus the termination was arbitrary and capricious.

## DICUSSION AND ANALYSIS

### *Assignment of Error Number One*

Mr. Hargrave argues in his first assignment of error that the district court erred in agreeing with VPSB that he was a nontenured teacher, and thus concluding that he was an at-will employee. He maintains that the district court should have found him to be a tenured teacher, entitling him to the additional procedural protections afforded to tenured teachers under La.R.S. 17:443(B).

The discipline of teachers is governed by La.R.S. 17:443. Subsection (A) of La.R.S. 17:443 provides the procedure for the discipline of nontenured teachers, while Subsection (B) provides additional protective procedures to be applied when disciplining tenured teachers. Thus, the first issue before this court is whether Mr. Hargrave was a tenured teacher, as he argued before the district court, or a nontenured teacher, as maintained by VPSB throughout these proceedings.

Mr. Hargrave asserts that he gained tenure status while employed as a teacher in East Baton Rouge Parish, and that he retained the status of tenured teacher when he relocated to Vermilion Parish to teach at Kaplan High School. He further argues that VPSB failed to include his personnel file in the record, and thus failed to establish his lack of tenure. In response, VPSB argues that a teacher's tenure status does not transfer from one school district to another, and Mr. Hargrave did not, therefore, retain his tenure status when he began teaching in Vermilion Parish.

Furthermore, even though Superintendent Byler referred to Mr. Hargrave as a nontenured teacher in multiple communications during the disciplinary proceedings and the due process hearing, Mr. Hargrave never corrected Superintendent Byler or referred to himself as a tenured teacher until he filed his memorandum in support of his petition for judicial review on February 6, 2024. While Mr. Hargrave argues that VPSB failed to provide his personnel file to support their assertion that he was a nontenured teacher, VPSB points out that Mr. Hargrave never sought to supplement the record with any additional evidence and did not object to VPSB's motion to lodge record.

VPSB further notes that after Mr. Hargrave argued before the district court that he was a tenured teacher, VPSB proffered at the judicial review hearing an affidavit from Superintendent Byler with documentation from Mr. Hargrave's employment file supporting their argument that Mr. Hargrave did not earn tenure while employed by VPSB. Mr. Hargrave argues, however, that the proffered affidavit is flawed because it presents an alleged summation of his personnel file without providing evidence of his qualifications.

Louisiana Revised Statutes 17:442(A)(1)(b) provides that "a teacher rated 'highly effective' for five years within a six-year period pursuant to the performance evaluation program as provided in R.S. 17:3881 through 3905 shall be granted tenure." The statute further provides in Subsection (B),

> The school superintendent shall notify a teacher, in writing, when tenure has been awarded and the teacher is deemed to have acquired tenure on the date specified therein. A teacher who is not awarded tenure remains an at-will employee of the public school board or the special school district but shall acquire tenure upon meeting the criteria established in Subsection A of this Section.

La.R.S. 17:442(B).

10

In the case of *Foreman v. Vermilion Parish School Bd.*, 353 So.2d 471 (La.App. 3 Cir. 1977), *writ denied*, 355 So.2d 257 (La.1978), this court specifically held, "It is clear from a reading of LSA-R.S. 17:442 that tenure is only acquired in a particular parish or city." In that case, the plaintiff had a total of sixteen years of teaching experience. However, he transferred from Lafayette Parish to a school in Vermilion Parish two years before his dismissal by the Vermilion Parish School Board. Since the plaintiff had not attained tenure in Vermilion Parish, this court upheld the district court's finding that the plaintiff was a probationary teacher at the time of his dismissal, and thus, not entitled to the substantive due process afforded tenured teachers.

As provided in La.R.S. 17:442(A)(1)(b), in order for Mr. Hargrave to be granted tenure in Vermilion Parish, he would have to be rated "highly effective" for five years within a six-year period. In his affidavit proffered by VPSB at the judicial review hearing, Superintendent Byler states that "Mr. Hargrave never received an overall evaluation rating of 'highly effective' for five (5) years within a six (6) year period[,]" and "was, therefore, a nontenured teacher for the Vermilion Parish School Board." In support of this statement, VPSB attached to the affidavit as "Exhibit A" Mr. Hargrave's Evaluation Reports for 2014 through 2022. These reports indicate that Mr. Hargrave was rated "Highly Effective" twice, for the school years of 2016-2017 and 2021-2022, but rated "Effective" for the remaining school years, with the exception of 2019-2020, for which he was given "No Rating Due to Covid." Mr. Hargrave has submitted no evidence in opposition to indicate that he was granted tenure while employed by VPSB, only arguing that he retained the tenure status he achieved while employed in East Baton Rouge Parish.

As this court has previously held that tenure does not transfer from one school system to another and the evidence supports VPSB's assertion that Mr. Hargrave did not attain tenure while employed with VPSB, we affirm the district court's finding that Mr. Hargrave was an at-will employee of VPSB and not a tenured teacher, as provided in La.R.S. 17:422.

*Assignment of Error Number Two*

Mr. Hargrave argues in his second assignment of error that even if he is found to be nontenured, the district court erred in affirming his termination because none of the evidence contained in the due process record reliably supports the claim that he published pornography; therefore, his termination was arbitrary and capricious.

La.R.S. 17:443(A) provides for disciplinary action to be taken against a nontenured teacher:

> The school superintendent may take disciplinary action against any nontenured teacher after providing such teacher with the written reasons therefor and providing the teacher with the opportunity to respond. The teacher shall have seven days to respond, and such response shall be included in the teacher's personnel file. The superintendent shall notify the teacher in writing of his final decision. Within sixty days of such notice, the teacher may seek summary review in a district court pursuant to Code of Civil Procedure Article 2592. The district court's review shall be limited to determining whether the action taken by the superintendent was arbitrary or capricious.

This court recently addressed the termination of a nontenured teacher in *In re Richard*, 23-476, pp.7-8 (La.App. 3 Cir. 1/24/24), 379 So.3d 849, 855:

> Non-tenured teachers are at-will employees of the school board. La.R.S. 17:442(B). The protection afforded non-tenured teachers has been addressed by this court before, and is summarized as follows:
>
> > The Louisiana Constitution and legislature entrust the administration of the school system to the parish school boards and not to the courts. The School Board is vested with broad discretion in the administration of the school system; nevertheless, due process requires judicial review to ensure that the school boards do not abuse this

discretion. Judicial review is limited, and where there is a rational basis, which is supported by substantial evidence for the school board[']s discretionary determination, the courts cannot and should not substitute their judgment for that of the school board. *Scott v. [O]uachita Parish Sch. Bd.*, 768 So.2d 702, 711 (La.App. 2 Cir.2000); *Myers v. Orleans Parish School Board*, 423 So.2d 1303 (La.App. 4 Cir.1982), *writ denied*, 430 So.2d 657 (La.1983).

The Supreme Court has accepted the following definition of "substantial evidence:"

> ["']Substantial evidence['] has been defined as [']evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions.'" (citations omitted) *Wise v. Bossier Parish School Board*, 851 So.2d 1090, 1094 (La.2003).

The district court must give great deference to the school board[']s findings of fact and credibility. *Arriola v. Orleans Parish Sch. Bd.*, 809 So.2d 932, 941 (La.2002). The district court may not substitute its judgment for that of the school board or interfere with the school board's good faith exercise of discretion. *Howard v. W. Baton Rouge [Parish] Sch. Bd.*, 793 So.2d 153 (La.2001). Thus, the school board[']s judgment should not be reversed in the absence of a clear showing of abuse of discretion. *Gaulden v. Lincoln Parish School Board*, 554 So.2d 152, 157 (La.App. 2 Cir. 1989), *writ denied*, 559 So.2d 126 (La.1990).

The School Board is given great discretion in fashioning, adopting[,] and implementing its plan[,] and the standard of review used by courts when called upon to review whether a school board complied with its own policies is substantial compliance. *Harris v. West Carroll Parish Sch. Bd.*, 476 So.2d 439 (La.App. 2 Cir.1985). It is also well established that determinations of credibility are within the purview of the school board. *Gaulden*, *supra*; *Wiley*, *supra*.

. . . .

*Ventroy v. Lafayette Parish Sch. Bd.*, 08-1249, pp. 4-5 (La.App. 3 Cir. 4/1/09), 6 So.3d 1039, 1043(alterations in original).

13

The *Richard* court then addressed the standard used by the district court in reviewing the superintendent's decision to terminate the employment of a nontenured teacher:

[Ms. Richard] correctly states that the district court's role in her case is to determine whether the superintendent's actions were arbitrary or capricious. La.R.S. 17:443(A).

Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. See *Burst v. Bd. Of Com'rs Port of New Orleans*, 93-2069 (La. 10/7/94), 646 So.2d 955, *writ not considered*, 95-265 (La. 3/24/95), 651 So.2d 284. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. A conclusion is "capricious" when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. *Coliseum Square Association v. City of New Orleans*, 544 So.2d 351, 360 (La.1989).

*Wise*, 851 So.2d at 1094. "Substantial evidence" is "'of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions.'[] *Coleman v. Orleans Parish School Bd.*, 93-0916 (La.App. 4 Cir. 2/5/97), 688 So.2d 1312, 1315[.]" *Id.*

. . . .

Neither the trial court nor this court are free to substitute their judgments for that of the superintendent. Our sole task is to ensure the superintendent does not abuse his discretion in personnel matters involving nontenured teachers. La.R.S. 17:443(A).

*Richard*, 379 So.3d at 856.

The December 9, 2022 Notice of Due Process Hearing sent to Mr. Hargrave notified him that Superintendent Byler was considering taking disciplinary action against him, which could include the termination of his employment. The notice further stated that the reason for said disciplinary action was the sexually explicit/pornographic video posted to a Snapchat account associated with Mr. Hargrave and that the video had been viewed by "co-workers and others." Mr.

14

Hargrave was given the opportunity to respond to these allegations at the December 19, 2022 due process hearing, at which he was represented by both an attorney and a union representative.

A second letter was sent to Mr. Hargrave, via certified mail, on January 9, 2023, again informing him that Superintendent Byler was contemplating disciplinary action against him based on the dissemination of the video, including the possible termination of his employment with VPSB, and giving Mr. Hargrave seven calendar days to respond in writing to the allegations. Mr. Hargrave's attorney responded on his behalf, sending a letter via email to VPSB's attorney asserting that Mr. Hargrave had neither violated any school board policy nor engaged in unprofessional conduct.

On May 12, 2023, Superintendent Byler informed Mr. Hargrave, in writing, that he was terminating Mr. Hargrave's employment with VPSB. Superintendent Byler stated that in reaching this decision, he questioned Mr. Hargrave's decision to create and save such a video on his personal cellphone when he suspected his phone and computer had previously been compromised and/or hacked. Superintendent Byler further found that Mr. Hargrave's ability to effectively serve as a teacher at Kaplan High School had been impacted, as evidenced by the numerous parents who declined to enroll their children in Mr. Hargrave's class. Finally, Superintendent Byler took into consideration the fact that Mr. Hargrave had been written-up and/or counseled on three separate prior occasions for "work-related deficiencies." It was made clear that the decision to terminate Mr. Hargrave's employment was based on "the totality of the situation." Mr. Hargrave responded by seeking summary review in the Fifteenth Judicial District Court.

During the February 20, 2024 judicial review, the district court found that the decision to terminate Mr. Hargrave's employment was within the superintendent's discretion, "[a]nd obviously there was enough information there at the time for him to make that decision to terminate." The district court then specified in its March 19, 2024 judgment that the superintendent's decision to terminate Mr. Hargrave's employment was neither arbitrary nor capricious.[2]

Considering all the actions taken by Superintendent Byler, VPSB, and the district court, the disciplinary proceedings instigated against Mr. Hargrave in this matter followed all the procedures provided in LA.R.S. 17:443(A) for the discipline of nontenured teachers.

Furthermore, Mr. Hargrave has admitted that he made the explicit video at the heart of this matter, and while he adamantly denies posting the video or circulating it, the record supports that it was viewed by co-workers, members of the community, and Kaplan High School students. The record further supports Superintendent Byler's finding that Mr. Hargrave's ability to teach was impacted by the dissemination of the video, such that parents were refusing to enroll their children in classes taught by Mr. Hargrave. We therefore find that there was substantial evidence which was properly weighed by Superintendent Byler when deciding to terminate Mr. Hargrave's employment. As such, Superintendent Byler's decision to terminate Mr. Hargrave's employment with VPSB was neither arbitrary nor capricious. This assignment of error is without merit.

---

[2]"The district court's review shall be limited to determining whether the action taken by the superintendent was arbitrary or capricious." La.R.S. 17:443(A).

**DECREE**

For the foregoing reasons, the judgment of the district court is affirmed. All costs of this appeal are assessed to Plaintiff/Appellant, Barret Hargrave.

**AFFIRMED.**